**In the Matter of the Alleged Mental Illness of Dennis A. DeMATTHEW.**

No. C7–84–702.

Court of Appeals of Minnesota.

June 19, 1984.

John Lund, Minneapolis, for DeMatthew.

Thomas L. Johnson, Hennepin County Atty., John Owen, Asst. County Atty., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge.

DeMatthew appeals the judgment of the trial court finding him mentally ill and com-

mitting him to Anoka State Hospital. We affirm.

## FACTS

On January 29, 1984, appellant DeMatthew was arrested and charged with making harassing phone calls to the 911 Emergency Center. The Hennepin County Municipal Court found DeMatthew incompetent to stand trial and referred him to Hennepin County District Court for possible civil commitment.

Trial on DeMatthew's alleged mental illness was held on February 8, 1984 and an order for commitment was issued. Appeal was taken from a judgment of commitment dated March 23, 1984 and filed March 26, 1984.

The trial court found DeMatthew suffered from paranoid schizophrenia, was deluded and was unable to provide for his basic needs. The court considered and rejected less restrictive alternatives to commitment, finding the alternatives inappropriate due to DeMatthew's mental condition. DeMatthew was committed to Anoka State Hospital.

## ISSUE

Whether the trial court properly committed DeMatthew to Anoka State Hospital as mentally ill.

## ANALYSIS

Minn.Stat. § 253B.09, subd. 1 (1982) provides that:

> If the court finds by clear and convincing evidence that the proposed patient is a mentally ill ... person and, that after careful consideration of reasonable alternative dispositions ... it finds that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment facility which can meet the patient's treatment needs ....

The definition of "mentally ill person" is found in Minn.Stat. § 253B.02, subd. 13 (Supp.1983).

"Mentally ill person" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to himself or others as demonstrated by (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure to provide necessary food, clothing, shelter or medical care for himself, as a result of the impairment.

. . . .

Appellant asserts he was not shown as posing a substantial likelihood of physical harm to himself or others, or as failing to provide necessities for himself, and claims the court failed to consider all less restrictive alternatives to commitment.

■ A substantial likelihood of causing harm is shown either by a recent attempt or threat of harm, or by a failure to provide necessities. Appellant argues the absence of violence or aggression directed at others required a finding that he posed no substantial likelihood of harm. The undisputed testimony of three witnesses, however, was that DeMatthew failed to provide necessities for himself.

■ Ronald Shepard, landlord and manager of the apartment building where DeMatthew lived, testified that DeMatthew's apartment was filled with garbage and infested by cockroaches. Food and garbage were left lying around the apartment and the resulting odor pervaded an entire floor of the building. As a result, DeMatthew was being evicted.

Officer William Jones, who arrested DeMatthew on January 29, 1984 for making harassing phone calls, testified DeMatthew's pants were torn, exposing his genitals to passers-by, and he wore no socks.

Finally, Candace Kohls, a psychiatric nurse employed by Hennepin County, testi-

fied DeMatthew told her he was not eating properly and couldn't afford food. DeMatthew also told Kohls he needed medical attention for a bite caused by a mouse carrying a sharp object, but that he had refused treatment from emergency room personnel because they were all Soviet agents. Kohls' written report recommended he be committed to Anoka State Hospital.

DeMatthew, against the advice of counsel, testified that attack mice and Soviet agents were harassing him. He also claimed the police were uncooperative in investigating the harassment. This testimony combined with the testimony and reports of the experts is ample evidence to support the court's finding that DeMatthew failed to provide necessary food, clothing, shelter or medical care for himself as a result of his mental illness.

■ Appellant further argues the court failed to consider all less restrictive alternatives to commitment. Psychologist Dr. Owen Nelsen testified DeMatthew was incapable of caring for himself and recommended treatment in a hospital setting. Kohls concurred, testifying she had attempted to discuss the possibility of voluntary treatment with DeMatthew. He responded by asking her to investigate the attack mice and the responsibility of Soviet agents for his situation. The trial court noted it had considered placement in a board and care facility or half-way house, but that these alternatives were rejected because of DeMatthew's lack of capacity, denial system, and uncooperative nature.

### DECISION

There is clear and convincing evidence that appellant DeMatthew is mentally ill and there was no suitable alternative to commitment. The trial court properly committed DeMatthew to Anoka State Hospital.

Affirmed.