**In the Matter of Ruth DAVIS.**

**No. C2–85–777.**

Court of Appeals of Minnesota.

July 16, 1985.

John Myron Lund, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Richard Osborne, Asst. Hennepin Co. Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Ruth Davis appeals an order committing her to the Anoka State Hospital for mental illness treatment. We affirm.

## FACTS

Appellant, age 55, is legally blind and diabetic. In January 1985, she lived at the Admiral Apartments in Minneapolis.

At a commitment hearing, a building caretaker, George LaPenotiere, testified that he had known Ruth Davis for five months and that her condition had been deteriorating for several months.

In January, LaPenotiere frequently found that the windows in appellant's apartment were left open. He closed them, but Davis always reopened them, complaining of gas fumes and people who were after her. On January 25, LaPenotiere called for police help. He was afraid appellant would freeze to death because the windows were open and the temperature was expected to drop to 18 degrees below zero.

Police Officer David Berkley said the wind chill was approximately 30 degrees below zero when he answered the caretaker's call. He found appellant's windows were wide open. Davis told Berkley she was warm and was airing the apartment of gas fumes. Berkley detected no fumes. Appellant was shaking from the cold and claimed her food was also poisoned by gas.

Ruth Davis suffered from a diabetic condition. Marlys Lenz, a long-time friend, testified that she was concerned about appellant's health. The tenants of Admiral Apartments were being evicted, and appellant had not found another place to live. Hennepin County social worker Rosemarie Clinton reported that Davis refused county assistance in finding a new apartment.

Appellant testified that gas fumes bothered her from the day she moved into the Admiral and irritated her skin. She denied being mentally ill or requiring treatment.

Psychologist David Anderson, the court-appointed examiner, said that Davis suffered from a paranoid disorder characterized by persecutorial delusions. He testified that her judgment, behavior, recognition of reality, and ability to reason and understand were impaired. Although Davis posed little danger to others, Anderson said she was a danger to herself. Her glucose level was markedly elevated, reflecting inattention to her diabetes, and she was unable to adequately meet her needs for food, clothing, shelter, or medical care. Anderson recommended involuntary hospitalization, rather than out-patient or voluntary treatment, in part because Davis lacked insight into her mental illness.

During local hospitalization pending the commitment hearing, Davis continued to suffer delusions, including the belief that her food was poisoned.

The trial court expressly rejected alternatives to involuntary hospitalization, including voluntary treatment, out-patient care, and continuance. A trial court referee felt that hospitalization was necessary because Ruth Davis lacked awareness of her condition, and because she was extremely vulnerable due to her blindness and diabetes. The trial judge observed that appellant had no problems when she took prescribed medications, and that a short hospitalization was appropriate "to stabilize her on medications."

## ISSUES

1. Are the findings and evidence adequate to show that appellant's condition poses danger of harm?

2. Did the trial court adequately consider alternative dispositions?

## ANALYSIS

Minnesota has a three part definition of mental illness for commitment purposes. Minn.Stat. § 253B.02, subd. 13 (1984). Evidence must show that a proposed patient has a "substantial psychiatric disorder." Further, it must be shown that the disorder is "manifested" by "instances" of faulty

perception or grossly disturbed behavior. Finally, there must be proof the condition poses specified dangers of harm to the proposed patient or others. Appellant challenges the sufficiency of evidence here to show the dangers set forth in the statute.

In addition, commitment cannot occur unless the record shows the effort of the trial court to consider and find unsuitable all "reasonable alternative dispositions." Minn.Stat. § 253B.09, subd. 1 (1984). Appellant also challenges the sufficiency of the record here on this effort.

We cannot set aside the trial court's findings of fact unless they are clearly erroneous, and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn.R. Civ.P. 52.01. However, we must have in mind the requirement that supporting evidence be clear and convincing. Minn.Stat. § 253B.09, subd. 1.

## I.

■ To permit commitments, a proposed patient's mental illness must be one that:

poses a substantial likelihood of physical harm to himself or others as demonstrated by (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure to provide necessary food, clothing, shelter or medical care for himself, as a result of the impairment.

Minn.Stat. § 253B.02, subd. 13 (1984).

The trial court found that appellant's condition was dangerous to her because her severe diabetes mandated diet control, which was compromised by her mental health, and because the condition led her to dangerously expose herself to the cold. Those factors constitute the danger of self-harm specified in the statute, and the findings are adequately sustained by the evidence. The evidence also shows dangers that appellant could not adequately provide for her food and shelter.

## II.

Appellant asserts that short-term monitoring of medications could occur without hospitalization. Her attorney argues:

Other monitoring, either from a Community Services Program or even by supervision and guidance of a long-time friend, was not even considered, yet alone ruled out as a non-viable alternative.

Section 253B.09, subd. 1, requires that the trial court give "careful consideration" to "reasonable" alternative dispositions. The mandate is a primary part of the process for judicial commitment under the Minnesota Commitment Act of 1982. Prevalent medical practice makes it apparent that monitoring of medications is commonly important, and inquiry whether this may be reasonably done without commitment is an important part of the approach demanded by the legislature.

■ Respondent contends that the proposed patient has a burden to show the existence of alternatives which the trial court could then consider. That is not so. Section 253B.09, subd. 1 puts upon the trial court a burden of inquiry, a demand for a probing search, a "careful consideration" of all alternatives to involuntary hospitalization.

Although the argument of appellant's counsel deals with a serious topic, the circumstances here are not as he represents them to be. The evidence in this case leaves no room for further consideration of a community alternative.

■ The court-appointed examiner testified that appellant needed involuntary hospitalization until her health was stabilized. Her condition had not stabilized by the time of commitment on March 13, 1985, and she had then received care in a local hospital for nearly two months. The trial court properly found that commitment was necessary during the period of stabilizing.[1]

1. The trial court did not, as counsel's argument implies, commit the patient for the monitoring of medications. Although the court specifically committed appellant so that she could receive medications, the need the court expressly noted was one for a stabilized condition.

## DECISION

Involuntary hospitalization of appellant is justified by the facts found by the trial court, and its findings are sustained by the evidence.

Affirmed.