**In the Interest of M.S.H.**

**Gordon ECKROTH, Petitioner and Appellee,**

v.

**M.S.H., Respondent and Appellant.**

**Civ. No. 910034.**

Supreme Court of North Dakota.

Feb. 22, 1991.

Gregory Ian Runge, Bismarck, for respondent and appellant.

Richard James Riha, Asst. State's Atty., Bismarck, for petitioner and appellee.

VANDE WALLE, Justice.

M.S.H. appealed from an order finding M.S.H. to be a person who is mentally ill and who requires treatment and ordering M.S.H. to be hospitalized at the North Dakota State Hospital for ninety days. We affirm.

■ On appeal, M.S.H. contends that there was no clear and convincing evidence showing M.S.H. to be a person requiring treatment as defined by section 25–03.1–02(10), NDCC. *See In Interest of R.N.*, 453 N.W.2d 819 (N.D.1990). A finding that the person is mentally ill is not alone sufficient to justify court-ordered treatment; our law authorizes an involuntary commitment only

if the petitioner proves by clear and convincing evidence that the respondent is a person requiring treatment as defined in section 25–03.1–02(10), NDCC. *In Interest of R.N.*, 450 N.W.2d 758 (N.D.1990). The definition of a person requiring treatment is one "who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property." Serious risk of harm is defined to mean a substantial likelihood [1] of:

"10. . . . . .

"a. Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

"b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

"c. Substantial deterioration in physical health, or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

"d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors." NDCC § 25–03.1–02(1).

■ It is not necessary to detail the clear and convincing evidence contained in the record which causes us to affirm the finding of the trial court that M.S.H. requires

---

**1.** M.S.H. urges us to adopt as a definition of "substantial likelihood" the explication Minnesota has enacted by statute, *i.e.*, a person poses a substantial likelihood of physical harm to self or others as demonstrated by "(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or (ii) a recent attempt or threat to physically harm self or others." Minn.Stat. § 253B.02, subd. 13 (1991 Supp.). *See Matter of DeMatthew*, 349 N.W.2d 855 (Minn.App.1984). If we were to adopt that definition, we would nevertheless affirm because the record reveals clear

and convincing evidence of both criteria. *See, e.g., Matter of Davis*, 371 N.W.2d 91 (Minn.App. 1985) [fact that mental health condition led patient to dangerously expose herself to cold constituted danger of self-harm specified in Minn. Stat. § 253B.02, subd. 13, supporting commitment of proposed patient due to mental illness]; *Matter of Pederson*, 363 N.W.2d 790 (Minn.App. 1985) [schizophrenic patient who set fire in her hospital room posed substantial likelihood of harm to herself and others for purposes of commitment law].

treatment. M.S.H. was diagnosed as having schizophrenia, paranoid type, chronic. The record supports the finding that she is suspicious, delusional, that she started a fire in her apartment, that she believes the treatment personnel and others are "doing things against her rather than for her benefit" and that she has expressed anger and resistance to efforts to provide community treatment.

But the need for treatment is not alone sufficient to order hospitalization. *Kottke v. U.A.M.*, 446 N.W.2d 23 (N.D.1989). Only if the court finds that a treatment program other than hospitalization is not adequate to meet the respondent's treatment needs and is not sufficient to prevent harm or injuries which the individual may inflict on their person or on others, may the court order hospitalization. *Id.* NDCC § 25–03.1–21(1); *O'Callaghan v. L.B.*, 447 N.W.2d 326 (N.D.1989).

The record reveals that alternative treatment for M.S.H. had been previously attempted and was unsuccessful. The court found what we observe to be a common thread in involuntary commitments for schizophrenia, *i.e.*, the refusal or failure to take prescribed medication. In addition, the court found that M.S.H., because of a perception of threats from other people, resists or lashes out at others. The court also found that M.S.H. would not voluntarily remain in community placements and that her history of threats to her own personal safety by exposure to elements rather than remaining in a protected setting were reasons that a treatment program other than hospitalization is not adequate to meet M.S.H.'s treatment needs and is not sufficient to prevent harm or injuries to M.S.H. or others. Those findings are supported by clear and convincing evidence, particularly when viewed in light of M.S.H.'s actual behavior.

■ An issue raised only tangentially in this case is whether or not M.S.H. should have been committed to a private hospital rather than the State Hospital for treatment. In the report of examination required by section 25–03.1–11, NDCC, Dr. Santos found that there were no forms of care and treatment that might serve as alternatives to involuntary hospitalization [*see In Interest of L.B.*, 452 N.W.2d 75 (N.D.1990)] and recommended in-patient treatment at a private hospital. That report was dated December 21, 1990 and a court order pending hearing was issued by the court that day requiring M.S.H. to be detained in the psychiatric unit of a private hospital in Bismarck. On December 24, a report assessing availability and appropriateness of alternate treatment was made by Dr. Santos in which he again found no appropriate and feasible alternate treatment and again recommended continued in-patient treatment at the private hospital. On the 26th of December the court issued a temporary treatment order requiring in-patient treatment at the private hospital. *See* NDCC § 25–03.1–17. Between that time and the time of the involuntary treatment hearing held on January 2, 1991, Dr. Santos was apparently called to military duty and Dr. Samuelson testified at the hearing. Dr. Samuelson recommended treatment at the State Hospital. Dr. Santos's report of December 24, 1990, assessing the availability and appropriateness of alternate treatment and Dr. Samuelson's testimony concerning alternate treatment satisfy the requirement of section 25–03.1–21(1) that "before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the State Hospital treatment facility."

At the hearing, counsel for M.S.H. attempted to show through cross-examination of the doctor and the petitioner, a social worker at the human service center, that alternatives to hospitalization were possible. The change in doctors was noted as a problem, but the issue of commitment to a private hospital rather than the State Hospital was not directly raised. The applicable statutes do not provide that hospitalization in a private hospital is an alternative treatment to hospitalization in the State Hospital. *See* NDCC § 25–03.1–21. But if the court is to order hospitalization

in a private hospital, the attending physician must agree. NDCC § 25–03.1–20(3). In this instance, the only attending physician present, Dr. Samuelson, recommended hospitalization at the State Hospital. There was no agreement to hospitalization at the private hospital. Although Dr. Santos did so recommend, he had left the State and he would not be present to attend M.S.H. if she were hospitalized in the private hospital. The apparent purpose of the statutory requirement of the agreement of the attending physician to private hospitalization is to assume that the physician is willing and available to treat the individual. Insofar as there was no agreement by the attending physician to hospitalization in the private hospital, the court did not err in ordering hospitalization at the State Hospital.

The order of commitment is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.