**In the Interest of M.B., Respondent and Appellant.**

**Civ. No. 910047.**

Supreme Court of North Dakota.

April 18, 1991.

Gregory Ian Runge (argued), Bismarck, for respondent and appellant.

Bruce B. Haskell, Asst. States Atty. (argued), Bismarck, for petitioner and appellee.

GIERKE, Justice.

M.B. appeals from an order of the Burleigh County Court committing him to the North Dakota State Hospital for 90 days to receive treatment for mental illness. We reverse.

M.B. was brought to the Emergency Room of St. Alexius Medical Center by police. Pursuant to Section 25–03.1–25(1), N.D.C.C., M.B. was committed to the St. Alexius Medical Center on an emergency

basis upon the application of Dr. T. Stoa, a physician at St. Alexius Medical Center in Bismarck. The application, dated December 18, 1990, stated that M.B. "is psychotic, and at risk to cause harm to self, or to get into situation where he would be harmed."

The next day, Dr. Shen Thakor, a psychiatrist at the Quain & Ramstad Clinic, filed a petition for the involuntary commitment of M.B. A preliminary hearing was held December 21, 1990. Following the hearing the County Court ordered M.B.'s commitment to the State Hospital for 14 days.

Thereafter, a treatment hearing was held on January 2, 1991. Following the hearing, the County Court ordered M.B.'s commitment to the State Hospital for a period of 90 days. The trial court found that M.B. is a person requiring treatment because he is mentally ill and there is a substantial likelihood of substantial deterioration in mental health if M.B. is not treated. M.B. filed an expedited appeal.

The dispositive issue on appeal is whether the evidence was sufficient to establish clearly and convincingly that M.B. is a person requiring treatment. He argues that there is a lack of clear and convincing evidence supporting the trial court's finding that he requires treatment because of a substantial likelihood of substantial deterioration in mental health.

■ This Court's review in involuntary commitment cases is limited to an examination of the procedures, findings and conclusions of the lower court. Section 25–03.1–29, N.D.C.C.; *Kottke v. U.A.M.*, 446 N.W.2d 23, 26 (N.D.1989). The trial court's determination of whether there is clear and convincing evidence that the respondent is a person requiring treatment is a finding of fact which we will not set aside on appeal unless it is clearly erroneous under Rule 52(a), NDRCivP. *In re Abbott*, 369 N.W.2d 116, 118 (N.D.1985).

■ Our law authorizes an involuntary commitment only if the petitioner proves by clear and convincing evidence that the respondent is a person requiring treatment as defined under Section 25–03.1–02(10), N.D.C.C. *O'Callaghan v. L.B.*, 447 N.W.2d 326 (N.D.1989).

Section 25–03.1–02(10), N.D.C.C., defines a "person requiring treatment" as "a person who is mentally ill ... and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property."

The trial court's finding that M.B. is a person requiring treatment is based on the definition of "serious risk of harm" contained in Section 25–03.1–02(10)(d):

"d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

We therefore focus on the evidence in support of the findings of the substantial likelihood of substantial deterioration in mental health.

■ In reviewing the record, we do not find sufficient support for the trial court's finding of a substantial likelihood of a substantial deterioration in mental health. Dr. Pierre Vuethey, a psychiatrist at the State Hospital, testified that he examined M.B. and found that M.B. had pressured speech, was angry at the police, the FBI, and the CIA. He also testified that M.B. was resistive to the idea of medication. Dr. Veuthey testified that if M.B. remains on Lithium Carbonate on a regular basis, his prognosis is fair to good; if he doesn't there would be a recurrence of thought disorder. He was asked:

"Q. What would the result of that be, the end result, I guess? Would he continue to deteriorate?

"A. Well, if he deteriorates further, it could become dangerous.

"Q. Dangerous to who?

"A. Whoever he believes at the time is a threat to him. He has done verbal threats in the past, before his admission, but those could become actual.

"Q. Would you consider him to be a danger to himself at all?

"A. No.

"Q. Would his condition cause him problems as far as taking care of his day to day needs, food and shelter and that type of thing?

"A. Probably.

"Q. In the report that you prepared assessing the availability and appropriateness of alternative treatment you listed West Central for case management and for medication monitoring, but it also appeared that your opinion was that that would not be appropriate at this time.

"A. No. Apparently they tried to treat Mr. B. before sending him to North Dakota State Hospital, and they were not successful, so I believe unless or until he's stabilized on Lithium, they will not be able to continue with his treatment.

"Q. Do you feel that there is an alternative to inpatient hospitalization at this point?

"A. Not at this time."

Dr. Vuethey's generalization that M.B. could become dangerous if he didn't take medication does not constitute clear and convincing evidence of a substantial likelihood of substantial deterioration in his mental health if he isn't treated. It was clear error for the trial court to have found otherwise.

At best the record leads only to the conclusion that M.B. is a person who would *benefit* from treatment with medication and that such treatment is only possible if he were hospitalized, because otherwise he refuses to take medication. That is not the statutory standard which authorizes our courts to commit the mentally ill. The standard for involuntary commitment remain clear and convincing proof that the mentally ill individual is a person who *requires* treatment as defined by the statute. *In Interest of R.N.*, 450 N.W.2d 758 (N.D. 1990). That standard was not met here.

Accordingly, we reverse and remand with instructions that the involuntary commitment petition be dismissed.

VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

ERICKSTAD, C.J., concurs in the result.