**In the Interest of S.S., Respondent and Appellant.**

**Civ. No. 920295.**

Supreme Court of North Dakota.

Nov. 5, 1992.

Gregory I. Runge, Bismarck, for appellant.

Patricia L. Burke, State's Atty., Bismarck, for appellee; appearance by Kristine Jensen Paranica, Asst. State's Atty.

LEVINE, Justice.

This is an expedited appeal from an order committing S.S. to the North Dakota State Hospital for ninety days to treat her mental illness. She challenges that order, claiming it was not supported by clear and convincing evidence that she was mentally ill and required treatment. We affirm.

In August, a Mandan police officer, believing S.S. was mentally ill, took her into custody and applied for her emergency admission to St. Alexius Hospital. The application alleged that S.S. had been drinking, had not been taking her medication and, based on a delusion that her former husband was Satan, had entered his home without permission in a failed attempt to remove her children from the premises. Dr. Roxas, a psychiatrist at St. Alexius Hospital, examined S.S. and determined it necessary to petition for her involuntary commitment to the State Hospital. Dr. Roxas concluded in that petition that S.S. was "mentally ill and as a result of such condition there is a reasonable expectation of a serious risk of harm if [S.S.] is not hospitalized." That conclusion was grounded upon clinical observations that, inter alia, S.S. was psychotic, had frequent delusions and paranoia, was a danger to her children due to her psychotic state, had poor judgment and insight, and had complied poorly with medication and treatment.

Following a preliminary hearing on the petition for involuntary commitment, the Burleigh County court determined that there was probable cause to believe S.S. was mentally ill and required treatment, and entered a temporary treatment order hospitalizing S.S. at the State Hospital for fourteen days. Before expiration of that temporary treatment order, Dr. Srisopark, a staff psychiatrist at the State Hospital, petitioned for S.S.'s involuntary commitment. After considering that petition at a treatment hearing, the county court ordered the involuntary commitment of S.S. for up to ninety days at the State Hospital. S.S. has appealed from that order.

On appeal, S.S. first argues that we should abandon the view held by a majority of this court that a trial court's determination of whether there is clear and convincing evidence that a mentally ill person is also a "person requiring treatment" is a finding of fact which we set aside only if clearly erroneous under Rule 52(a), NDRCivP. E.g., In the Interest of M.H., 475 N.W.2d 552 (N.D.1991). S.S. argues that the determination of whether a civil commitment petition is sustained by clear and convincing evidence is a conclusion of law fully reviewable by this court. Notwithstanding differences of opinion held by past and present members of this court concerning the applicability of Rule 52(a) to proceedings of this nature, e.g., In the Interest of M.H., supra; In the Interest of Kupperion, 331 N.W.2d 22 (N.D.1983); In the Interest of Rambousek, 331 N.W.2d 548 (N.D.1983), we decline the invitation to revisit this issue now because we are convinced that the county court's determination that S.S. required treatment was supported by clear and convincing evidence. E.g., In the Interest of M.S.H., 466 N.W.2d 151 (N.D.1991).

S.S. argues that the trial court's finding that she is "mentally ill" is not sustained by clear and convincing evidence. We disagree. Under section 25–03.1–02(9), a " [m]entally ill person' means an individual with an organic, mental, or emotional disor-

der which substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations." There are thus two focal points of mental illness under our statute: first, disorder, and second, substantial impairment.

■ Here, the record is replete with evidence supporting the court's finding of "mental illness." With regard to the first focal point, the disorder, we note that Dr. Roxas diagnosed S.S. as having schizophrenia chronic, undifferentiated type, and noted that S.S. had been diagnosed a paranoid-schizophrenic in 1989. Likewise, Dr. Srisopark testified that S.S. has schizo-affective disorder, bipolar type and/or bipolar disorder. Both doctors considered S.S. to be psychotic. Accordingly, it is clear that S.S. is "an individual with an organic, mental, or emotional disorder."

As to the second focal point, S.S. asserts that "the appellee presented no evidence" that her ability to conduct personal and social affairs was substantially impaired. We disagree.

The record reveals that S.S. has consistently complied poorly with medication treatment that her doctors agree stabilizes her. Based on delusions about her former husband, she has attempted to take her children from his home, and has placed numerous calls to the Mandan Police Department requesting her former husband be arrested because he is Satan. Dr. Srisopark's report of examination stated that S.S. is "agitated, demanding, threatening and intrusive of other patient's treatment.... She is physically aggressive and caus[ed] [an] injury to [a] staff [member]." Dr. Srisopark also noted that S.S.'s "deviant behavior and symptomology cannot be tolerated by herself or others."

Dr. Srisopark's testimony at the treatment hearing illuminated the facts in his report. He testified that S.S. threw coffee at a State Hospital staff member and injured another staff member in an altercation. He also testified that S.S. would become physically aggressive when her demands were not met, and expressed his concern that her delusional behavior would worsen without inpatient treatment. Dr. Srisopark cited an example of S.S.'s continued delusional behavior, describing S.S.'s belief in her power to heal other patients and her request that he release another patient, as well as S.S.

Dr. Roxas also noted S.S.'s agitation and her aggressiveness with staff members at St. Alexius Hospital. Finally, Doctors Roxas and Srisopark each noted the extensive delusions S.S. had experienced, including her belief that she was pregnant with eight babies, had forty-nine transmitters in her body, was the Virgin Mary, was sixteen years old, has had thirteen thousand children, and has been hypnotized by Satan.

This evidence of S.S.'s aggressiveness and tendency to act on her delusions clearly supports a finding of substantial impairment of self-control, judgment and discretion in personal affairs and social relations. Therefore, the record supports the trial court's conclusion that S.S. is mentally ill under NDCC § 25–03.1–02(9).

S.S. also contends that there was no clear and convincing evidence that she is a "person requiring treatment" under NDCC § 25–03.1–02(10). "A finding that [a] person is mentally ill is not alone sufficient to justify court-ordered treatment; our law authorizes an involuntary commitment only if the petitioner proves by clear and convincing evidence that the respondent is a person requiring treatment as defined in section 25–03.1–02(10), NDCC." *In the Interest of M.S.H.*, 466 N.W.2d at 152; *In the Interest of R.N.*, 450 N.W.2d 758, 759 (N.D. 1990). Section 25–03.1–02(10) defines a "person requiring treatment" as one:

"[W]ho is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. 'Serious risk of harm' means a substantial likelihood of:

a. Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

■ S.S. urges us to adopt Minnesota's statutory definition of "substantial likelihood." Under that definition, a person poses a substantial likelihood of physical harm to himself, herself or others by "(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or (ii) a recent attempt or threat to physically harm self or others." Minn.Stat.Ann. § 253B.02, subd. 13 (Supp. 1992). *See also Matter of DeMatthew*, 349 N.W.2d 855 (Minn.App.1984). S.S. asserts she cannot be considered a person requiring treatment if we incorporate Minnesota's definition of "substantial likelihood" into section 25–03.1–02(10), because there is no evidence that she could not care for herself or that she would harm herself or others. However, we decline to adopt the Minnesota definition because we believe subsections (a) through (d) of section 25–03.1–02(10) provide trial courts with adequate guidance to make, in their sound discretion, determinations of "substantial likelihood." In addition, the extremely narrow definition urged by S.S. is plainly inconsistent with the sweeping array of behavior which appropriately may be considered under section 25–03.1–02(10).

S.S. maintains that even if we reject Minnesota's definition of "substantial likelihood," there is no clear and convincing evidence that she requires treatment. We disagree.

■ The trial court found that S.S. was a person requiring treatment based on subsections (b) and (d) of section 25–03.1–02(10). That finding was grounded upon additional findings that S.S. had injured a staff person at the State Hospital and was delusional and verbally and physically aggressive. Finally, the court held that an alternative treatment program, less restrictive than hospitalization, would not meet S.S.'s needs, finding that S.S. will injure others and will act on her delusions. We believe these findings and conclusions were supported by clear and convincing evidence.

We have described the clear and convincing evidence contained in the record which causes us to affirm the finding that S.S. is mentally ill. That evidence also clearly and convincingly supports the court's finding that S.S. required treatment. *Cf., In the Interest of Abbott*, 369 N.W.2d 116 (N.D. 1985) [person diagnosed with schizo-affective disorder, having delusional problems, and determined a danger to self found to be person requiring treatment].

Yet, S.S. argues the evidence shows, at most, that she would "benefit" from treatment with medication, but does not "require" treatment. She asserts that our holding in *In the Interest of M.B.*, 467 N.W.2d 902, 904 (N.D.1991), therefore, requires us to reverse her commitment. *See also, In the Interest of R.N.*, 450 N.W.2d at 761. Again, we disagree.

In *In the Interest of M.B., supra* at 904, the experts could only "generaliz[e] that M.B. could become dangerous if he didn't take medication." We concluded that a generalization does not constitute clear and convincing evidence of a substantial likelihood of substantial deterioration in one's mental health. This case is clearly distinguishable. S.S.'s hospitalization is not grounded upon mere generalizations that she could become dangerous. Instead, she has actually exhibited her dangerousness through an unauthorized intrusion into her former husband's home, acting on her delusions and exhibiting physical aggression. Therefore, we reject S.S.'s assertion that

she would merely benefit from, but does not require, treatment.

Accordingly, the order of commitment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and JOHNSON, JJ., concur.