## In the Interest of K.J.L.

### James T. AVARD, Petitioner and Appellee,

v.

### K.J.L., Respondent and Appellant.

### Civil No. 950385.

Supreme Court of North Dakota.

Jan. 5, 1996.

Allen M. Koppy, State's Attorney, Mandan, for petitioner and appellee.

Gregory Ian Runge, Bismarck, for respondent and appellant.

VANDE WALLE, Chief Justice.

K.J.L. appealed from an order requiring that he undergo treatment for mental illness on an outpatient basis for a period of 90 days. We affirm.

K.J.L. was a resident at Dakota Alpha, a transitional rehabilitation program for adults who have suffered severe spinal or head injuries. K.J.L.'s case manager filed a petition for involuntary commitment, alleging that K.J.L. was mentally ill and required treatment. The petition stated that K.J.L. "experiences periodic episodes of explosive aggressive/assaultive behavior." In particular, K.J.L. assaulted a nurse and another resident who was in a wheelchair; as a result of this "blow up episode," K.J.L. was hospitalized by emergency at St. Alexius Medical Center in Bismarck, North Dakota. As required by section 25–03.1–17, NDCC, the Morton County District Court held a preliminary hearing on the petition and determined that there was probable cause to believe that K.J.L. was mentally ill and required treatment. The court ordered that K.J.L. be hospitalized at St. Alexius Medical Center for fourteen days.

After a treatment hearing held pursuant to section 25–03.1–19, NDCC, the trial court found that K.J.L. requires medication as a result of his head injury and that he becomes aggressive and does not handle his temper when he does not take his medication. Although K.J.L. gave conflicting testimony that he was not the aggressor, the trial court

determined that K.J.L. assaulted the patient in the wheelchair and the nurse who was attempting to stop the assault. The trial court ordered that K.J.L. undergo treatment other than hospitalization; specifically, K.J.L. was ordered to undergo treatment for a period of 90 days at St. Alexius as an outpatient while residing with his family. The order also provided K.J.L. with the option to return to Dakota Alpha if he so chooses. On expedited appeal, K.J.L. challenges the sufficiency of the evidence used to determine that K.J.L. required treatment.

Before a court can issue an order for involuntary treatment, the petitioner has the burden to prove by clear and convincing evidence that the respondent is a person requiring treatment. N.D.Cent.Code § 25-03.1-19; *In Interest of B.D.*, 510 N.W.2d 629, 631 (N.D.1994). To establish that an individual is a "person requiring treatment," section 25-03.1-02(11) provides a two-step inquiry: (1) the court must find that the respondent is mentally ill, and (2) the court must find that there is a reasonable expectation that, if not treated, there exists a serious risk of harm to the respondent, others, or property. *See, e.g., In Interest of J.A.D.*, 492 N.W.2d 82, 83 (N.D.1992).

Our review on appeal is limited to an examination of the procedures, findings, and conclusions of the lower court. N.D.Cent. Code § 25-03.1-29; *In Interest of B.D.*, 510 N.W.2d at 631. Although K.J.L. urges this court to reconsider the standard we use to review involuntary treatment orders, it is established that a majority of our court has held that the trial court's determination of clear and convincing evidence that the respondent is a person requiring treatment is a finding of fact subject to a more probing "clearly erroneous" standard of review by this court. *In Interest of J.S.*, 530 N.W.2d 331, 333 (N.D.1995). Thus, our focus for this appeal is whether there was clear and convincing evidence to support the trial court's finding that K.J.L. was a person requiring treatment.

A "mentally ill person" is statutorily defined as "an individual with an organic, mental, or emotional disorder which substan-

tially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations." N.D.Cent.Code § 25-03.1-02(10). Dr. Doan Nguyen, a licensed psychiatrist at St. Alexius Medical Center and the only expert to testify at the treatment hearing, testified that he had examined K.J.L. and had been treating K.J.L. since K.J.L.'s hospitalization at St. Alexius. Dr. Nguyen diagnosed K.J.L. as suffering from an "organic mental disorder . . . with mood disturbance—hypomanic state" related to three separate head injuries, the most recent having occurred in July 1995. K.J.L. was also diagnosed as having "personality change secondary to [the] head injury with aggression" and "partial complex seizure disorder secondary to the head injury." Dr. Nguyen testified that K.J.L.'s aggressive behavior was not diagnosed until after the second head injury in 1980.

Although K.J.L. does not challenge the diagnosis that he has an organic mental disorder, K.J.L. asserts that he does not satisfy the statutory definition of "mentally ill person" because there was no clear and convincing evidence of substantial impairment. *In Interest of S.S.*, 491 N.W.2d 721, 723 (N.D. 1992) [explaining that the statutory definition of "mentally ill person" has two focal points: disorder and substantial impairment]. We disagree. Dr. Nguyen testified that when K.J.L. does not take his medication according to his treatment plan, he has episodes of seizures and unwarranted behavior, which K.J.L. may not be able to remember. Although medication prevents K.J.L.'s seizures and stabilizes his mood, the record indicates that K.J.L. did not take his medication prior to the episode at Dakota Alpha, resulting in assaultive behavior toward a wheelchair bound patient and a nurse who was attempting to stop K.J.L.'s physical aggression. K.J.L. was unable to completely remember the incident. The record supports the conclusion that K.J.L.'s self-control and judgment are substantially impaired without medication; thus, K.J.L. is a "mentally ill person."

Although the respondent is mentally ill, it does not necessarily mean K.J.L. is a "person requiring treatment." N.D.Cent.

Code § 25–03.1–02(11); *In Interest of B.D.,* 510 N.W.2d at 631. K.J.L. asserts that the petitioner did not establish a reasonable expectation that, if untreated, K.J.L. seriously risks harm to himself, others, or property. N.D.Cent.Code § 25–03.1–02(11). "Serious risk of harm" includes:

"a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

N.D.Cent.Code § 25–03.1–02(11).

K.J.L. argues that the court erred in its finding that K.J.L. required treatment under subcategories (b), (c), and (d) because the psychiatrist recommended and the court ordered outpatient treatment. K.J.L. claims "[i]t make[s] no sense that a person with a dangerous, aggressive behavior would be allowed to be on an outpatient order with the option of returning to Dakota Alpha." Elaborating on this argument, K.J.L. claims that the court's order for outpatient treatment implies that the treatment would benefit K.J.L. but that such treatment is not required. *See In Interest of D.H.,* 507 N.W.2d 314, 316 (N.D.1993) [explaining that mentally ill individual must require treatment]; *In Interest of R.N.,* 450 N.W.2d 758, 761 (N.D. 1990) [stating that statutory standard is clear and convincing evidence that mentally ill individual requires treatment, not that the individual would benefit from treatment]. But, K.J.L.'s argument ignores the trial court's underlying premise for ordering outpatient treatment: pursuant to the order, K.J.L.'s medication intake will be supervised so that

he will receive the medication necessary to prevent seizures and to stabilize his mood so that he will not pose a serious risk of harm, even though he is receiving the treatment on an outpatient basis.

K.J.L. has a right "[t]o the least restrictive conditions necessary to achieve the purposes of treatment." N.D.Cent.Code § 25–03.1–40(2). Furthermore, section 25–03.1–21, NDCC, provides:

"Before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs *other than hospitalization* which has been prepared and submitted by the state hospital or treatment facility. If the court finds that a treatment program *other than hospitalization* is adequate to meet the respondent's treatment needs and is sufficient to prevent harm or injuries which the individual may inflict upon the individual or others, the court shall order the respondent to receive whatever treatment *other than hospitalization* is appropriate for a period of ninety days." [Emphasis added.]

*See In Interest of J.S.,* 499 N.W.2d at 606–07 (stating that trial court must determine least restrictive alternative for treatment); *In Interest of J.A.D.,* 492 N.W.2d at 86 (explaining that the trial court must determine whether alternative treatment to hospitalization is adequate).

■ Hospitalization may be the least restrictive alternative to treat mental illness in some instances. *See In Interest of J.S.,* 499 N.W.2d at 607 (involuntary hospitalization was appropriate when alternative forms of treatment were inadequate to treat J.S.'s violent, aggressive behavior). Here, however, there was testimony that K.J.L.'s mental illness could be adequately treated on an outpatient basis, assuming that he takes his medication. We conclude that the expert's examination report and direct testimony about K.J.L.'s exhibition of aggressive behavior supported the trial court's conclusion by clear and convincing evidence that K.J.L. requires treatment and that outpatient treatment is appropriate. *Compare In Interest of S.S.,* 491 N.W.2d at 724–25 [clear and con-

vincing evidence, rather than mere generalizations, supported involuntary treatment when mentally ill individual exhibited physical aggression] *with In Interest of M.B.,* 467 N.W.2d 902, 904 (N.D.1991) [generalization that individual could become dangerous was not sufficient evidence that individual required treatment]. We affirm the lower court's order.

MESCHKE, LEVINE and NEUMANN, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.