2024 IL App (2d) 230449-U
No. 2-23-0449
Order filed February 6, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2135 |
| MICHAEL E. BREWER, | ) ) | Honorable Michael J. Noland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in granting the State's petition to deny defendant pretrial release. Affirmed.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023), defendant, Michael E. Brewer, appeals from the circuit court's order granting the State's petition to deny defendant pretrial release and ordering him detained pursuant to Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]  See *Rowe v.*

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today

*Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Defendant argues that defense counsel was ineffective for failing to request that the court assess the feasibility of supervising his medication compliance as a condition of release. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On October 10, 2023, the State charged defendant with domestic battery (contact, one-to-two prior convictions[2]) (720 ILCS 5/12-3.2(a)(2) (West 2022)), domestic battery (physical contact) (720 ILCS 5/12-3.2(a)(2) (West 2022)), domestic battery (bodily harm) (720 ILCS 5/12-3.2(a)(1) (West 2022)), and obstructing a police officer (720 ILCS 5/31-1(a)(2) (West 2022)). It alleged that defendant grabbed his son, Michael E. Brewer (Michael), by the throat, lifted him up, and pushed him against a wall and that defendant disobeyed an order to not walk away and pulled away when a police officer attempted to stop him.

¶ 5      A police report related that, on October 6, 2023, Elgin police officer Katherine Kirsh responded to 256 Michigan St, Unit C, for a domestic battery, after a caller advised dispatch that his father was attempting to fight with him. At the scene, Kirsh met with Michael's sister, Michelle Brewer, and defendant. Defendant advised that Michael had left the residence. Defendant was upset and shouted, "He's a dead man!" and "I'm going to kill him!" Defendant also stated that Michael is "evil" and "must be killed."

_____

(SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

[2]Defendant had prior Kane County convictions in case Nos. 23-CF-46001 and 19-CM-1513.

¶ 6    Defendant then walked to another, unrelated incident near the intersection of Gifford Place and Raymond Street.  Officer Kirsh instructed defendant to remain where he was, as Kirsh observed officers with drawn service weapons at the unrelated incident.  Defendant did not follow Kirsh's instructions, and Kirsh attempted to stop him by grabbing defendant's arm.  However, defendant pulled away and continued walking toward the direction of the unrelated incident.  Michelle and Kirsh eventually took defendant back to the residence.

¶ 7    Later, at the hospital, Michael did not allow officer Kirsh to photograph his reported injuries.  Kirsh reported that she did not observe any injuries to Michael but noticed a red stain on his left hand.

¶ 8    Defendant and Michelle separately related the following to officer Kirsh.  Michael was not attending school and was taking drugs.  He was disrespectful to defendant and picked up a knife.  Michelle took the knife away, and defendant grabbed Michael's throat and lifted him off the ground.  Michael told Michelle to call the police, and she was concerned defendant would kill Michael.  Michael hit defendant in the face, defendant let Michael go, and Michael left the residence.

¶ 9    Officer Kirsh further related that, following the October 6 incident, defendant was arrested for domestic battery and, after being taken into custody, continued to make homicidal statements and begin making suicidal statements.  Crisis counselor Cortes completed an involuntary petition, and defendant was transported to St. Joseph's hospital.  Officer Hall spoke with Michael and related to officer Kirsh that Michael had visible, fresh scratch marks on the back of his neck and that Michael advised that he returned home and he and defendant got into a verbal altercation that led to both of them shoving each other.  Michael left the residence.  He did not mention defendant grabbing his throat.

¶ 10                          A.  State's Petition to Detain

¶ 11    On October 12, 2023, the State filed a verified petition to deny pretrial release, alleging that defendant committed a detainable offense, domestic battery, and that he had previous domestic battery convictions in 2019 (misdemeanor) and 2023 (felony), the latter for which he was on probation.  He also had previous felony convictions for robbery (2009) and burglary (1997) and misdemeanor convictions for driving under the influence (2017), battery (1996), and theft (1996). The State also alleged that defendant posed a real and present threat to the safety of any person or the community.  725 ILCS 5/110-6.1(a)(4) (West 2022).

¶ 12    The parties appeared on this case, and the circuit court continued the case to the following day, noting that defendant was not present because Elgin police reported that he was in the hospital.

¶ 13    Ultimately, the hearing on the State's petition occurred on October 19, 2023.  The State tendered the October 2023 police report and two additional reports.

¶ 14    In case No. 2023-CF-46, a police synopsis related that, on January 6, 2023, defendant (who is 6 feet 7 inches tall and weighs 340 pounds), Stephanie Clayton (his wife), and Michelle were having a physical and verbal altercation over money problems.  Defendant called police, and defendant relayed to police that Michelle hit the top of his head with an umbrella, but he was uncooperative in explaining what had happened.  Michelle related that defendant became aggravated after she refused to give him money, and he charged at her and Clayton and struck Michelle in the face with a closed fist.  Michelle then took an umbrella and struck defendant in the head to defend herself.  The officer observed a swollen bruise on Michelle's lower lip that was bleeding.  After defendant was taken into custody, he made suicidal statements and stated that he would rather die than go back to jail.  He was transported to Lake Behavioral in Waukegan for

inpatient treatment. Defendant was charged with domestic battery (physical contact - other prior conviction) and domestic battery (bodily harm – other prior conviction).

¶ 15   In case No. 2019-CM-1513, a police synopsis related that, on June 14, 2019, defendant was intoxicated at his home and argued with Clayton (his then girlfriend). During the argument, defendant kicked Clayton in the face, which resulted in a cut to her lower lip. They continued to argue and threaten each other, until Clayton called the police. Defendant was taken into custody and charged with domestic battery (bodily harm) (720 ILCS 5/12-3.2(a)(1) (West 2018)).

¶ 16   At the hearing on its petition, the State relied on defendant's prior convictions to argue that he has a history of violence and poses a threat to Michael and that no conditions could mitigate his threat. It also noted defendant's height and weight, the fact that he was on probation, and his homicidal and suicidal statements. The State also noted that, in case No. 2019-CM-1513, defendant's probation was unsatisfactorily terminated, and it argued that it was unlikely that defendant would comply with any conditions of release.

¶ 17   Defense counsel responded that defendant had been in the hospital for two weeks and, pursuant to probation, was in domestic violence counseling and anger management counseling (at Crisis Center). He was then put into a 28-day inpatient program substance abuse at Gateway and was currently in an outpatient program.

¶ 18   Counsel further proffered that Michael was using illegal substances and argued with defendant. Michael did not mention to police that defendant grabbed his throat or pushed him against a wall, and the arresting officer did not observe any injuries on him. Based on this evidence, counsel argued that the State had not established that the proof was evident or the presumption great that defendant committed the charged offenses.

¶ 19    Defense counsel also argued that dangerousness had not been established, where defendant was currently taking seven prescribed medications for his mental health issues and was cleared from the hospital and determined to no longer be a threat to himself or the public. Counsel maintained that defendant was not able to take his seven medications at the Kane County jail ("they're not the same medications the jail issues") and that, if found to be a threat, he could stay with his sister in Schaumburg.

¶ 20                                  B. Circuit Court's Ruling

¶ 21    The circuit court granted the State's petition, finding that anger issues underlie defendant's behavior, whether related to mental health issues or the facts surrounding his current and prior convictions, which involved forcible felonies and violent offenses reflecting a pattern of behavior "probably based on mental health issues[.]" The court continued,

> "the fact that he's on seven different forms of medication and he does not have access to those necessarily is a true concern for the Court. Those are conditions that the Court cannot control and evidently he being unsupervised, unattended to in a manner that would control his behavior, it is evident to the Court that there is at least a real and present threat to himself, if no one else. He may have suicidal ideations as well from what I'm hearing here and that's a real concern for the Court as well."

¶ 22    Defendant interrupted, stating that he had a three-month supply of his medications, the resources to see his psychiatrist once per week in Carpentersville, and to attend all his meetings, a 12-step program, and anger management counseling. The jail, he asserted, does not provide the types of medication he takes. Defendant also noted that he is diagnosed with Bipolar 1, Bipolar 3, anxiety, and clinical depression. Defense counsel offered that it took two weeks to get defendant properly medicated and that, "if he remains in the jail, he's going back to square one."

¶ 23    The State replied that defendant was not complying with his medication at the time of the events in this case, which was not an isolated incident.

¶ 24    The court stated that the issue was ultimately for the trier of fact to decide at trial, where the State could call an expert witness to testify as to defendant's prescription and medication compliance.

¶ 25    The court found that defendant was a real and present threat to his family, to others, and to himself. "I have not heard any rebuttal regarding any suicidal ideations that have been reported here." Defense counsel interrupted, stating that the "hospital would not release [defendant] if they didn't find he was no longer---," at which point the court stated this was a "supposition" and that no doctor's report was offered in support. Counsel also asked about conditions of release, such as defendant staying with his sister in Schaumburg, and the circuit court rejected this request, finding that there was no "guarantee" that defendant would stay away from "his other family members" or that he would be compliant. Defendant interrupted, noting he was on probation, but the circuit court noted that he had also been terminated as unsatisfactory.

¶ 26    The circuit court set the next hearing one week later, noting that, if defendant was without medication for one week, the court was "sorry for that and I wish we could do better, but at this point I just don't feel as though we can[.]"

¶ 27    In its written order, the court found that less restrictive conditions would not assure the community's safety, where there was a low level of assurance that defendant will have access (or will necessarily comply) with medications to successfully and timely manage his mental health issues.

¶ 28    Defendant appealed. On January 3, 2024, he filed a memorandum in support of his appeal, and, on January 29, 2024, the State responded.

¶ 29                                          II. ANALYSIS

¶ 30    Defendant requests that we remand the case for the circuit court to assess whether supervision of his medicine intake can sufficiently mitigate public safety risks to grant him liberty. He concedes that the issue is forfeited, because defense counsel did not seek this specific condition in the circuit court. However, he requests that we address the issue as an ineffective-assistance-of-counsel claim. Defendant asserts that the issue had merit (thus, establishing defense counsel's deficient performance for failing to pursue a meritorious claim) and that any extra time in custody is prejudicial to him. For the following reasons, we find defendant's argument unavailing.[3]

¶ 31    Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Id.* at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). To show sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for

_____

    [3]In his form notice of appeal, defendant checked boxes, with no elaboration, asserting that the State did not meet its burden of showing that the proof is evident and the presumption great that he committed the charged offenses, that it established dangerousness, and that no conditions could mitigate the risk he posed or his willful flight. He also checked a box, asserting that he was denied a fair hearing, elaborating that the hearing was not held by the proper deadline. None of the foregoing arguments are addressed in his memorandum, therefore, we do not reach them. *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22.

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The "effectiveness of *** counsel must be assessed against an objective standard of reasonableness from the perspective of the time of the alleged error and without hindsight." *People v. Reed*, 2014 IL App (1st) 122610, ¶ 66. A failure to establish either prong of the *Strickland* test is fatal to a claim of ineffective assistance. *People v. Peterson*, 2017 IL 120331, ¶ 79.

¶ 32     If the defendant does not raise his or her ineffective assistance of counsel claim in the circuit court, our review on appeal is *de novo*. *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67 (2006). Further, we review under the manifest-weight-of-the-evidence standard the circuit court's factual findings regarding whether the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence where it is unreasonable. *Id.* We review for an abuse of discretion the circuit court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion occurs only when the circuit court's decision is unreasonable. *Id.*

¶ 33     Defendant contends that his behavior stemmed from mental illness and that medication's potential to manage his illness was clear. The circuit court's determination that defendant would not remain medication compliant, he argues, was erroneous because it assumed that he would be unsupervised. Defendant argues that defense counsel should have argued for supervised medication intake and that such an option would both be a reasonable and least restrictive condition and address the court's concern that defendant would not take his medications. Defendant concedes that not all counties have the same social service programs, but requests, without citing

to relevant authority,[4] that we remand for the court to assess the feasibility of supervised medicine intake.

¶ 34    We cannot conclude that counsel was ineffective for failing to pursue an argument for supervised medication intake.  In the absence of evidence that there exists such a program in Kane County, counsel's performance cannot be characterized as deficient.  Indeed, the circuit court stated, "I wish we could do better, but at this point I just don't feel as though we can[.]"  Nor has defendant shown prejudice.  *Strickland* requires a defendant to show actual prejudice to succeed on his or her claim, rather than mere speculation as to prejudice.  *People v. Bew*, 228 Ill. 2d 122, 135-36 (2008).  Again, there is no evidence that a supervised medication program exists, and, therefore, prejudice cannot be shown.  Stated differently, there is no reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

¶ 35    Where the circuit court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a)(1)-(6) (West 2022).  In reaching its determination, the circuit court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature

---

[4]Defendant cites to an involuntary commitment case involving a respondent who resided in a transitional rehabilitation program, where the court affirmed the commitment, in part, because the order required supervised medication so that the respondent would not pose a risk to others. *In the Interest of K.J.L.*, 541 N.W.2d 698, 701 (N.D. 1996).

and seriousness of the specific, real, and present threat to the safety of any person or the community that would be posed by the defendant's release; (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release; and (6) when a person is charged with, as relevant here, domestic battery, the court may consider certain additional factors. *Id.* The additional factors a court may consider when a defendant is charged with domestic battery include: (1) whether the alleged incident involved harassment or abuse as defined in the domestic violence statute; (2) whether the defendant has a history of domestic violence or a history of other criminal acts; (3) the defendant's mental health; (4) whether the defendant has a history of violating court orders; (5) whether the defendant has been or is potentially a threat to any other person; (6) whether the defendant has access to deadly weapons or has a history of using deadly weapons; (7) whether the defendant has a history of abusing alcohol or any controlled substance; (8) the severity of the alleged incident; (9) whether a separation from the victim of abuse or a termination of the relationship between them has recently occurred or is pending; (10) whether the defendant has exhibited obsessive or controlling behaviors toward the victim; (11) whether the defendant has expressed suicidal or homicidal ideations; and (12) any other factors the court deems have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior. *Id.* § 110-5(a)(6).

¶ 36    The circuit court considered the foregoing facts concerning defendant's mental health issues, finding that they likely contributed to his actions in his case. It noted defendant's medications and the fact that he would not have access to them in the jail, which would render him, at a minimum, a threat to himself. However, it also noted with respect to defendant's suicidal ideations that there was no rebuttal evidence, such as a doctor's report, reflecting that defendant

was no longer a threat (presumably) to himself. The court considered defense counsel's request that defendant stay with his sister but determined that no conditions of release would ensure that defendant would remain medication compliant and refrain from interacting with certain family members. These findings were not unreasonable, nor was the determination that no conditions of release could mitigate any threat defendant posed, particularly where, in addition to his mental health issues, he made homicidal statements, has a history of domestic violence, was on probation, and was previously unsatisfactorily terminated from probation.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 39    Affirmed.