In the Interest of C.W.

Robert N. WATERS, Medical Director,
North Dakota State Hospital,
Petitioner and Appellee,

v.

C.W., Respondent and Appellant.

Civil No. 960152.

Supreme Court of North Dakota.

July 24, 1996.

Loren C. McCray (argued), Larson Law
Firm, Jamestown, for appellant.

Kenneth L. Dalsted (argued), Special Assistant Attorney General, Jamestown, for appellee.

MARING, Justice.

This is an expedited appeal from an order continuing C.W.'s treatment at the North Dakota State Hospital (Hospital) for one year and an order authorizing the Hospital to medicate C.W. for ninety days involuntarily. C.W. challenges the orders, claiming clear and convincing evidence does not support them. We affirm.

C.W. voluntarily admitted herself to the Hospital on March 18, 1996. She requested release the following day. In response, the Hospital filed a petition asking that C.W. be involuntarily committed and a separate request to treat C.W. with medication. On March 27, the District Court of Stutsman County issued orders authorizing the Hospital to treat and involuntarily medicate C.W. for ninety days.

On April 11, the hospital filed another petition with the court, requesting an order for less restrictive treatment for C.W. On April 12, the court issued an order requiring C.W. to undergo treatment through the South Central Human Service Center (Center) for the remainder of her ninety-day treatment period. The order required C.W. to submit to case management and medication monitoring, to comply with her medication, and to maintain regular appointments. C.W. was released from the Hospital April 12.

On April 17, the Center submitted a notice to the court, reporting that C.W. had an initial contact with the Center and was "refusing any therapy." On May 14, the Center submitted an application for modification of C.W.'s treatment. In the application, Christine Saar of the Center reported that C.W. was refusing to take her medications, was delusional, and was "experiencing auditory hallucinations." After a hearing on May 17, the court ordered C.W. to return to the Hospital for the remainder of her ninety-day treatment period.

C.W. was not present at the May 17 hearing, and on May 20, she requested another

hearing. Subsequently, on May 24, the Hospital filed a request to medicate C.W. involuntarily. On June 12, the court held a hearing to consider whether C.W.'s treatment at the Hospital should continue and whether the Hospital should medicate C.W. involuntarily. After the hearing, the court issued an order continuing C.W.'s treatment at the Hospital for one year and an order allowing the Hospital to medicate C.W. involuntarily for ninety days.

■■■ C.W. appeals, arguing clear and convincing evidence does not support the court's orders. When we review mental health orders, we seek "[t]o balance the competing interests of protecting a mentally ill person and of preserving that person's liberty." *In Interest of J.S.*, 530 N.W.2d 331, 333 (N.D.1995). Therefore, "trial courts ... use a clear and convincing standard of proof while we use a more probing 'clearly erroneous' standard of review." *Id.* We will affirm an involuntary treatment order unless an erroneous view of the law induced it or we are "firmly convinced" it is unsupported by clear and convincing evidence. *In Interest of R.N.*, 513 N.W.2d 370, 371 (N.D.1994).

■■■ C.W. first argues the petitioner did not produce clear and convincing evidence showing C.W. is a "person requiring treatment." Before a court can issue an involuntary treatment order, "the petitioner has the burden to prove by clear and convincing evidence that the respondent is a person requiring treatment." *In Interest of K.J.L.*, 541 N.W.2d 698, 700 (N.D.1996). Under section 25–03.1–02(11), N.D.C.C., a "person requiring treatment" is "a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property." Therefore, to prove that a respondent is a "person requiring treatment" a petitioner must provide clear and convincing evidence the respondent is mentally ill or chemically dependent *and* there is a "reasonable expectation" the respondent poses "a serious risk of harm" if untreated. *K.J.L.*, 541 N.W.2d at 700.

The trial court concluded C.W. "suffers from a mental illness which substantially im-

pairs her capacity to use self-control, judgment and discretion." The record shows Dr. Dennis Kottke testified C.W. was subject to delusions, such as believing her husband to be Satan and believing she could converse aloud with Jesus. Dr. Kottke testified C.W. said she planned to divorce her husband and marry Ray Stevens, the entertainer. Christine Saar, a social worker, testified C.W. was delusional and subject to auditory and visual hallucinations. Dr. Kottke testified, based on his observations and contact with C.W., that she was suffering from a bipolar disorder with psychotic features. On appeal, C.W. does not directly challenge the trial court's conclusion that she is mentally ill. We conclude clear and convincing evidence in the record supports the trial court's conclusion that C.W. "suffers from a mental illness which impairs her capacity to use self control, judgment and discretion."

■ C.W., however, argues clear and convincing evidence does not support the trial court's conclusion that, if C.W. is untreated for her mental illness, there is a substantial likelihood she will pose a danger to herself or others. C.W. claims the petitioner's evidence on risk was inadequate because it consisted of speculation based on past history, rather than current evidence of dangerousness.

■ A showing of immediate risk of harm, however, is not necessarily required to prove that an untreated person can pose a "serious risk of harm." Under section 25–03.1–02(11), N.D.C.C., a "serious risk of harm" exists when there is "substantial likelihood" of:

"a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

Significantly, section 25–03.1–02(11)(d), N.D.C.C., specifically allows "patterns in the person's treatment history" to be used as a basis for finding a "serious risk of harm," and we have further held "[a] court can use what has happened in the past as 'prognostic' evidence to help predict future conduct." *In Interest of J.S.*, 545 N.W.2d 145, 149 (N.D. 1996).

Here, Dr. Kottke testified: C.W. had been admitted to the Hospital 27 times; her treatment record showed several past suicide attempts, threats, and medication overdoses; C.W. was currently angry and threatening, and, if released, C.W. would pose a suicide risk. Saar testified: C.W. had been admitted to the area crisis unit twenty-five times; she had threatened suicide on several different occasions; and, after C.W.'s last release from the hospital, she refused treatment for her mental illness and deteriorated to a point where she was unable to care for herself. C.W., on the other hand, testified she was well and had never felt stronger. She testified she was happy in general, and only angry about being in the Hospital.

After hearing the evidence, the trial court concluded "there is a substantial likelihood of harm to [C.W.] as there is a substantial likelihood without hospitalization of a substantial deterioration in mental health which would predictably result in a dangerousness to herself based upon treatment history, past suicide attempts, and current actions." Because clear and convincing evidence supports the trial court's conclusions that C.W. suffers from a mental illness and would create a substantial likelihood of "dangerousness to herself" if untreated, we conclude the trial court did not err in finding C.W. requires continuing treatment at the Hospital.

■ C.W. next argues clear and convincing evidence does not support the trial court's authorization of forced medication for her. Under section 25–03.1–18.1, N.D.C.C., a treating psychiatrist may request permission to medicate "a person under a mental health

treatment order." Section 25–03.1–18.1(1)(a), N.D.C.C., requires the treating psychiatrist "and another licensed physician or psychiatrist not involved in the current diagnosis or treatment of the patient" to certify:

"(1) That the proposed prescribed medication is clinically appropriate and necessary to effectively treat the patient and there is a reasonable expectation that if the person is not treated as proposed there exists a serious risk of harm to that person, other persons, or property;

(2) That the patient was offered that treatment and refused it or that the patient lacks the capacity to make or communicate a responsible decision about that treatment;

(3) That prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient; and

(4) That the benefits of the treatment outweigh the known risks to the patient."

A court may not authorize involuntary treatment with prescribed medication unless the factors certified under section 25–03.1–18.1(1) are proven by clear and convincing evidence. N.D.C.C. § 25–03.1–18.1(3); *In Interest of B.D.*, 510 N.W.2d 629, 632 (N.D.1994).

C.W. claims there is no evidence showing C.W. would be "a serious risk of harm" if untreated. As discussed earlier, we find no error in the trial court's finding there is a reasonable expectation that C.W. poses a risk of harm to herself if untreated.

C.W. further argues, however, there was no showing involuntarily medicating her "is the least restrictive form of intervention necessary." We have concluded, "under circumstances where a respondent's judgment might well be impaired," an objective standard should be applied in determining whether involuntary medication of a patient is the "least restrictive form of intervention necessary." *B.D.*, 510 N.W.2d at 633.

Here, Dr. Kottke and Dr. William Pryatel certified that medication with Haldol Decanoate was "clinically appropriate and necessary" to treat C.W. Dr. Kottke testified it was necessary to treat C.W. with drugs to stabilize her condition, which had deteriorated since C.W. was last medicated. Dr. Kottke testified treatment with Haldol Decanoate, an injectable drug, would stabilize C.W.'s condition. Dr. Kottke testified treatment with Depakote, a drug taken orally, would be "ideal," but that this was not a viable option because C.W. had refused to take Depakote when offered and "absolutely refused" to take any medication voluntarily. Dr. Kottke testified that, after C.W. was treated in the Hospital, she might be able to be released into an alternative treatment program, but that alternatives to hospitalization were not feasible until C.W. was stabilized.

Saar testified C.W.'s condition deteriorated when she went off her medication, C.W. refused to comply voluntarily with drug therapy and C.W. refused to take Depakote when offered.

C.W. testified she did not need to take medication and that Dr. David. G. Saunders, who saw her in April, told her she did not need medication. Dr. Saunders did not testify, but a report on his consultation with C.W. is part of the record. In his report, Dr. Saunders indicated he recommended treatment with Depakote to C.W., she refused to accept treatment, and he recommended she see him again when ready to accept treatment.

In *B.D.*, 510 N.W.2d at 633, we considered a case similar to C.W.'s. B.D. argued treating him with injectable medication was not the "least restrictive form of intervention" given his desire not to be medicated at all. *Id.* We concluded, when the choice is between involuntarily treating a patient with drugs (which could stabilize the patient and allow an early release from hospitalization), and not medicating the patient at all (which could cause a deterioration in condition and lead to indefinite hospitalization), that forced medication is the "least restrictive form of treatment." *Id.*

In this case, Dr. Kottke's testimony clearly and convincingly establishes that involuntary medication is the least restrictive form of treatment available for C.W., given her refusal to take medication voluntarily and given that her condition deteriorates when she is not medicated. Dr. Kottke's testimony is

supported by Saar's testimony and Dr. Saunder's report. After objectively considering the clear and convincing evidence in the record regarding involuntary medication of C.W., we conclude the trial court did not err in finding "the prescribed medication is the least restrictive form of intervention necessary to meet [C.W.'s] current treatment needs."

The trial court's order continuing C.W.'s treatment and its order authorizing involuntary treatment of C.W. with medication are affirmed.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

SANDSTROM, Justice, concurring specially.

I agree with the result reached by the majority. I write separately to express my grave concern over the district court's refusal to grant even a temporary stay of the order for involuntary medication.

At the conclusion of the hearing, the district court refused to stay the involuntary-medication order for 24 hours so C.W. could appeal to this Court and seek a longer stay. The district court erroneously thought it lost jurisdiction immediately upon issuing its order. The district court cited N.D.C.C. § 25-03.1-29 which provides in part: "Pending appeal, the order appealed from shall remain in effect, unless the supreme court determines otherwise." No appeal was pending, however, until the appeal was filed with the clerk of the trial court, N.D.R.App.P. 2.1(a), and the district court retained jurisdiction at the time to stay its own order. Upon filing the appeal, this Court stayed the involuntary medication order, but C.W. had already been medicated with haldol decanoate.

Haldol is a "psychotropic medication." *In Interest of Goodwin,* 366 N.W.2d 809, 810 (N.D.1985). As counsel for the medical director of the State Hospital acknowledged at oral argument, and as the Court has repeatedly noted, haldol decanoate has potential side effects that are serious, adverse and irreversible. *See, e.g., In Interest of J.S.,* 528 N.W.2d 367, 369 (N.D.1995) ("J.S. suffers from tardive dyskinesia, a movement disorder of the mouth and tongue, after treatment with the haldol decanoate."); *In Interest of B.D.,* 510 N.W.2d 629, 633 (N.D.1994) ("Dr. Santos admitted that the medications that have been prescribed, namely Haldol and Prolixin, carry a possibility of adverse side effects."); *Goodwin.*

Involuntary psychotropic medication is a seriously invasive procedure with potential permanent side effects. The district court's refusal to at least grant a limited stay is an abuse of discretion. *See Medical Arts Clinic, P.C. v. Franciscan Initiatives, Inc.,* 531 N.W.2d 289, 301 (N.D.1995) ("abuse of discretion occurs if a decision is arbitrary, capricious, or unreasonable, or if it misinterprets or misapplies the law") (citing *City of Fargo v. Ness,* 529 N.W.2d 572 (N.D.1995)).

To the district court, I offer the admonition of Oliver Cromwell: "I beseech you to think it possible you may be wrong."