649 N.W.2d 231 (2002)
2002 ND 132
In the Interest of D.Z.
Mario Castillo, M.D., and William Pryatel, M.D., Petitioners and Appellees,
v.
D.Z., Respondent and Appellant.
No. 20020190.
Supreme Court of North Dakota.
August 15, 2002.
*233 Merle Ann Torkelson, State's Attorney, Washburn, for petitioners and appellees.
D.Z., pro se, for respondent and appellant.
VANDE WALLE, Chief Justice.
[¶ 1] D.Z. appealed, pro se, from July 1, 2002 orders of the trial court involuntarily committing D.Z. to the North Dakota State Hospital and authorizing forced medication upon him. We hold the trial court did not err in finding that D.Z. is a mentally ill person in need of treatment and that alternative treatment to involuntary commitment at the state hospital is not appropriate. We affirm.

I
[¶ 2] D.Z. was admitted to the state hospital in Jamestown on May 31, 2002 on an emergency basis, after he asked F.B.I. personnel to investigate his neighbors for conspiring against him. After a preliminary commitment hearing on June 7, 2002, the trial court found probable cause to believe that D.Z. was a mentally ill person in need of treatment and ordered him involuntarily committed for 14 days. Subsequently, petitions were filed to extend D.Z.'s involuntary commitment at the state hospital and to obtain court authorization for forced medication of D.Z. After a June 28, 2002 hearing, the trial court found D.Z. was a mentally ill person in need of treatment and ordered he be committed for treatment at the state hospital for 90 days.
[¶ 3] The court found that D.Z. has a "bipolar-manic depressive disorder" causing him to suffer delusions that he is the second son of God and that there is a wide conspiracy of persons, including personnel at the state hospital, who are trying to poison and kill him. The court found that, without involuntary commitment and forced medication, D.Z. presents a serious risk of harm to himself by his refusal to eat food and drink liquids which he fears are poisoned. The court also found that, without treatment, D.Z. presents a serious risk of harm to others because his paranoia and delusional beliefs could become worse and could result in him harming *234 others in attempts to stop the perceived conspiracy against him. The court entered separate orders on July 1, 2002 authorizing involuntary hospitalization of D.Z. for a period of 90 days, until September 28, 2002, and also authorizing forced medication treatment.

II
[¶ 4] D.Z. asserts he was given inadequate notice of the June 28, 2002 hearing, because he received the notice only two days before the hearing and the notice was not signed by the court until the hearing day. Under N.D.C.C. § 25-03.1-12, the court must give a respondent notice of the time and place of a hearing on a petition for involuntary commitment, and "[t]he notice must be given at the earliest possible time and sufficiently in advance of the hearing date to permit preparation for the hearing."
[¶ 5] D.Z. does not assert the petition and notice failed to adequately apprise him of the issues at the hearing. Rather, his sole objection is that he received the notice only two days in advance of the hearing and that it was not signed by the court until the day of the hearing. At least twice during the hearing, the court informed D.Z. that it would continue the proceeding and schedule it for another day if D.Z. wanted additional time to prepare. D.Z. responded that he wanted the hearing to continue and he did not desire or need additional preparation time. Section 25-03.1-12, N.D.C.C., requires notice be given sufficiently in advance of the hearing "to permit preparation for the hearing." We conclude D.Z. waived any objection he may have had to the timeliness of the notice when he told the court he did not need additional time to prepare and when he rejected the court's offer for a continuance.

III
[¶ 6] D.Z. asserts the trial court erred in finding that he is a person in need of treatment. Before the trial court can issue an involuntary treatment order, the petitioner must prove by clear and convincing evidence that the respondent is a person requiring treatment. N.D.C.C. § 25-03.1-20; In re D.P., 2001 ND 203, ¶ 4, 636 N.W.2d 921. To prove that the respondent is a person requiring treatment, as defined under N.D.C.C. § 25-03.1-02(11), the petitioner must prove by clear and convincing evidence the person is mentally ill and there is a reasonable expectation that, if the person is not treated, he poses a serious risk of harm to himself, others, or property. In re D.P., at ¶ 5. The trial court's decision must be based upon clear and convincing evidence, while this Court reviews the trial court's findings under a more probing clearly erroneous standard of review. In re J.S., 2001 ND 10, ¶ 4, 621 N.W.2d 582. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made. In re H.G., 2001 ND 142, ¶ 3, 632 N.W.2d 458.
[¶ 7] At the hearing, Dr. Mario Castillo, a board certified psychiatrist practicing at the state hospital, testified D.Z. is a mentally ill person and that, without medication, D.Z. presents a serious risk of harm to himself and others. Dr. Castillo testified D.Z. has a bipolar disorder and is manic with psychotic features including grandiose delusions and paranoia. Dr. Castillo testified D.Z.'s perception of reality is gravely impaired. D.Z. believes he is the second son of God and that there is a wide conspiracy by neighbors and others to kill him. D.Z. has *235 refused food, drink, and medication at the hospital because he believes hospital personnel are trying to poison him. Dr. Castillo testified that without medication D.Z.'s paranoia and delusions could get worse and could result in danger to D.Z. by his failure to eat and drink and could also present a danger to others by D.Z. attempting to stop the perceived conspiracy against him or by attempting to defend against the perceived threats by others to kill him.
[¶ 8] D.Z. testified at the hearing that two doctors who had previously worked at the state hospital were currently in the state penitentiary in Bismarck serving 105-year sentences for their part in the conspiracy against him. D.Z. testified that upon Dr. Castillo leaving the hearing he would be placed in handcuffs by F.B.I. agents, who were working with D.Z. to investigate the conspiracy. D.Z. testified Dr. Castillo would then be sentenced by D.Z.'s "older brother, Jesus."
[¶ 9] Dr. Castillo testified D.Z. has exhibited threatening behavior and a verbally hostile attitude while in the state hospital. Although D.Z. has not yet exhibited overt violent action, such conduct is not a prerequisite to finding that a person poses a serious risk of harm to himself or others. In re D.P., 2001 ND 203, ¶ 9, 636 N.W.2d 921. "Direct evidence of overt violence or an expressed intent to commit violence are not required" to find a person poses a serious risk of harm. Id. See also In Interest of S.S., 491 N.W.2d 721 (N.D.1992) (declining to adopt Minnesota's definition of "substantial likelihood" requiring a recent attempt or threat to physically harm self and others). When one or more reasonable inferences can be drawn from credible evidence, this Court must accept the inferences drawn by the trial court. Id. The trial court found the specific risk, if D.Z. were not hospitalized and treated, was that D.Z. would "deteriorate physically and mentally without medicationmay act on perceived threats against him." We conclude the trial court's findings that D.Z. is a mentally ill person who is in need of treatment and who presents a danger to himself and others are not clearly erroneous.

IV
[¶ 10] D.Z. asserts the trial court erred in ordering involuntary commitment rather than alternative treatment. When an individual is found to be a person requiring treatment he has the right to the least restrictive conditions necessary to achieve the purposes of the treatment. In re J.K., 1999 ND 182, ¶ 15, 599 N.W.2d 337; N.D.C.C. §§ 25-03.1-21 and 25-03.1-40(2). The court must make a two-part inquiry: (1) whether a treatment program other than hospitalization is adequate to meet the individual's treatment needs; and (2) whether an alternative treatment program is sufficient to prevent harm or injuries which the individual may inflict upon himself or others. In re J.K., at ¶ 15. The court must find by clear and convincing evidence that alternative treatment is not adequate or hospitalization is the least restrictive alternative. Id. This Court will not set aside the trial court's findings unless they are clearly erroneous. Id.
[¶ 11] Dr. Castillo testified that alternative treatment other than involuntary confinement and forced medication was not appropriate at the time of the hearing, because D.Z. did not believe he was mentally ill and he, therefore, refused to take prescribed medications. Additionally, D.Z. refused to take medications at the hospital because of his delusional beliefs that hospital personnel were attempting to poison and kill him.
[¶ 12] The record includes Dr. Castillo's June 13, 2002 report stating that an *236 alternative program of case management, psychiatric monitoring, and follow up had been considered and could possibly be used upon D.Z.'s discharge from the hospital. In the report, Dr. Castillo concluded the alternative treatment program was not currently appropriate, because D.Z.'s condition was not stable and D.Z.'s delusions prevented him from consistently taking the necessary medication. The trial court found that an alternate program would not presently be adequate to meet D.Z.'s needs for treatment or to prevent harm to himself or others, and we conclude the trial court's finding is not clearly erroneous.
[¶ 13] On July 17, 2002 Dr. Castillo petitioned the trial court for an order for less restrictive treatment. In his petition, Dr. Castillo stated D.Z. had been cooperative with in-patient treatment and had responded positively to Haldol. The trial court entered an order on July 23, 2002, accepting D.Z.'s waiver of hearing and ordering that D.Z. be placed on a less restrictive treatment program, whereby he remain on prescribed medication but receive case management services on an out-patient basis through West Central Human Service Center, until September 28, 2002. At oral argument, D.Z. explained that he had improved substantially since the court's July 1, 2002 orders and, since his release from the hospital, he has been doing well on the current treatment regimen.

V
[¶ 14] D.Z. asserts the trial court erred in ordering him to be treated with medications. Dr. Castillo and Dr. William Pryatel both requested that they be authorized to administer a number of different medications for D.Z., including Lithium, Geodone, Seroquel, Prolixin, Haldol, and Olanzapine. They did not seek to use all of these medications simultaneously, but to administer them only as necessary to effectively treat D.Z.'s condition. According to Dr. Castillo, the use of any one of these particular drugs would depend upon which drugs provided the most benefit, the least side affects, and were best tolerated by D.Z.
[¶ 15] For the trial court to authorize treatment with prescribed medication, the treating psychiatrist and another licensed physician must certify, and the court must find by clear and convincing evidence, the following factors under N.D.C.C. § 25-03.1-18.1:
1. a. Upon notice and hearing, a treating psychiatrist may request authorization from the court to treat a person under a mental health treatment order with prescribed medication. The request may be considered by the court in an involuntary treatment hearing. As a part of the request, the treating psychiatrist and another licensed physician or psychiatrist not involved in the current diagnosis or treatment of the patient shall certify:
(1) That the proposed prescribed medication is clinically appropriate and necessary to effectively treat the patient and there is a reasonable expectation that if the person is not treated as proposed there exists a serious risk of harm to that person, other persons, or property;
(2) That the patient was offered that treatment and refused it or that the patient lacks the capacity to make or communicate a responsible decision about that treatment;
(3) That prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient; and

*237 (4) That the benefits of the treatment outweigh the known risks to the patient.
See In Interest of J.S., 528 N.W.2d 367, 368 (N.D.1995).
[¶ 16] There is record evidence to support the existence of each of these factors. Dr. Castillo testified the medications requested are clinically appropriate to treat D.Z.'s condition and without them D.Z. poses a risk of harm to himself and others, D.Z. refused treatment with these medications, these medications are the least restrictive form of intervention necessary to treat D.Z., and the benefits of this treatment outweigh the risks to D.Z. The trial court found the statutory factors were proven by clear and convincing evidence, and we conclude the trial court's finding is not clearly erroneous.

VI
[¶ 17] In accordance with this opinion, we affirm the trial court's order finding D.Z. is a mentally ill person requiring commitment at the state hospital for a period not to exceed 90 days, and we also affirm the court's order authorizing prescribed medication for treatment of D.Z.'s condition.
[¶ 18] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.