2005 ND 201

**In the Interest of P.B.**

**William Pryatel, M.D., Petitioner and Appellee**

v.

**P.B., Respondent and Appellant.**

**No. 20050351.**

Supreme Court of North Dakota.

Nov. 29, 2005.

Leo A. Ryan, Special Assistant Attorney General, Jamestown, ND, for petitioner and appellee.

Thomas E. Merrick, Jamestown, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1] P.B. appeals an order from the district court requiring him to be hospitalized at the North Dakota State Hospital for continuing treatment. We affirm.

I.

[¶ 2] P.B., a 37–year–old man, has been hospitalized at the State Hospital continuously since June 2003. He suffers from bipolar disorder with manic and psychotic features causing him to have delusions of grandeur imagining he is the King of Prussia or Germany; paraphilia, a sexual deviant behavior that has manifested itself in a molestation of a relative; and anti-social personality disorder which has resulted in threatening behavior including occasionally lashing out at people in anger. P.B. also has a history of alcohol and cannabis use and dependence.

[¶ 3] A petition requesting continuing treatment at the State Hospital based on P.B.'s past history of mental disorders and violence was filed by Dr. William Pryatel. At the continuing treatment hearing, Dr. Pryatel testified P.B. had struck numerous patients and staff throughout the years.

Dr. Pryatel opined that P.B. still requires treatment because he is a serious risk to himself and others if he is not treated. The district court found by clear and convincing evidence that P.B. continues to suffer from mental disorders and requires treatment for his disorders.

[¶ 4] On appeal, P.B. does not object to continued hospitalization. P.B. argues that as part of the least restrictive conditions for his treatment, he should be allowed to be employed outside the State Hospital.

## II.

[¶ 5] We are sensitive to the liberty interest at stake when reviewing an order for continued treatment. *Interest of M.S.*, 1999 ND 117, ¶ 5, 594 N.W.2d 924. With this fundamental interest involved, an individual requiring treatment has a right to receive the least restrictive conditions necessary for treatment. N.D.C.C. § 25–03.1–40(2); *Interest of R.F.*, 2005 ND 102, ¶ 4, 697 N.W.2d 311. Under a least restrictive analysis, a district court must make a two-part inquiry: (1) whether a treatment program other than hospitalization is adequate to meet the treatment needs of the individual; and (2) whether an alternative treatment program is sufficient to prevent harm or injuries which the individual may inflict upon himself or others. *Interest of K.G.*, 2005 ND 156, ¶ 4, 703 N.W.2d 660. District courts must use a clear and convincing standard of proof while this Court uses a more probing clearly erroneous standard of review. *Interest of J.S.*, 530 N.W.2d 331, 333 (N.D. 1995). Under this more probing standard, "we will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence." *Id.*

[¶ 6] P.B. argues that under N.D.C.C. § 25–03.1–40(11) he retains all civil rights, including the constitutional right "to obtain employment wherever possible." N.D. Const. art. I, § 7. Thus, P.B. asserts as part of the least restrictive treatment available to him, he should retain the right to work where he chooses. The argument is a novel one, but fallacious for several reasons.

[¶ 7] P.B.'s civil rights are, out of necessity, limited based on his involuntary commitment at a mental health facility. Involuntary commitment includes "a massive curtailment of liberty." *Interest of J.B.*, 410 N.W.2d 530, 532 (N.D.1987). Similar to other involuntary commitment settings, an individual committed to a mental health facility does not enjoy the same level of freedom and rights as an uncommitted individual. *Id.* ("Commitment proceedings generally mirror criminal proceedings"). "[I]ncarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). If P.B. were allowed to leave the hospital to work at his leisure, the entire purpose of his continuing treatment order would be upset.

[¶ 8] Under N.D.C.C. § 25–03.1–21(1), a district court has the decision of either hospitalization or "treatment program other than hospitalization." In order for P.B. to be able to engage in the employment of his choice during treatment, the evidence would have to show a "treatment program other than hospitalization" is both adequate to address his treatment needs and sufficient to address the risk of harm to P.B. and others. *Id.* P.B. agrees he needs hospitalization. Once a decision of hospitalization is made, it is not the province of this Court to micro-manage the State Hospital as to whether P.B. should be allowed to work where he chooses. *Cf. Interest of*

*R.R.*, 2004 ND 183, ¶ 1, 690 N.W.2d 429 (noting a district court is required "only to determine whether treatment other than hospitalization is appropriate, not which unit in the hospital is appropriate").

[¶ 9] P.B.'s past pattern of conduct shows that P.B. is still a risk to the community if he was left unsupervised. *Interest of K.G.*, 2005 ND 156, ¶ 7, 703 N.W.2d 660 (noting past conduct can be an indiction of predicting future events in mental health appeals). This is P.B.'s ninth admission to the State Hospital. At his most recent stay in a less restrictive transitional living facility, P.B. physically assaulted another patient after the patient knocked off P.B.'s hat. P.B. testified that he kicked "the shit out of the guy." P.B. lamented that the guy was "persistent as all heck." When P.B. knocked the guy down, he would just get up again. P.B. continued to hit the patient until he was restrained. On this record, there was sufficient evidence to support the district court's finding that hospitalization was the only adequate facility for P.B.'s treatment needs.

### III.

[¶ 10] The continuing treatment order is affirmed.

[¶ 11] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.