2006 ND 103

**In the Interest of K.L.**

**Lori Shaleen, Ph.D., Petitioner and Appellee**

v.

**K.L., Respondent and Appellant.**

**No. 20060115.**

Supreme Court of North Dakota.

May 11, 2006.

Leo A. Ryan, Special Assistant Attorney General, Jamestown, N.D., for petitioner and appellee.

Thomas E. Merrick, Jamestown, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] K.L. appeals the district court's continuing treatment order. He was ordered to remain hospitalized for a period of one year in the North Dakota State Hospital. He argues the district court erred when it ordered continued hospitalization, because he contends he is capable of living independently with the help of his family. We affirm, concluding the district court's findings of fact are not clearly erroneous.

I

[¶ 2] K.L., a 25–year–old man, was admitted to the State Hospital in December 2003. K.L. has been diagnosed with schizophrenia, paranoid type; depressive disorder, not otherwise specified; and substance abuse of over-the-counter medications. K.L. was transferred to the State Hospital's transitional living home in April 2004, but he soon relapsed into a paranoid

and aggressive state and had to be readmitted to the State Hospital after one month in the transitional living home. K.L.'s current treatment program includes the Crossroads Program, a hospital-based residential program designed as an intermediate level between inpatient treatment and transitional living home placement; a behavioral plan to monitor the activities of daily living such as taking a shower, changing into clean clothes, brushing one's teeth, using deodorant, combing one's hair, taking medication, and keeping one's room clean; and medication, including Zyprexa to treat paranoia, Prosac to treat depression, and Seroquel for anxiety. He is also working for Progress Enterprises, a sheltered workshop located on the State Hospital grounds that is designed to improve the patient's vocational skills. According to K.L., he would be capable of living independently with family help, which his family contends they are willing and able to provide.

[¶ 3] In February 2006, Dr. Lori Shaleen petitioned to continue K.L.'s hospitalization for one year. Alternative treatments to hospitalization included the transitional living home and independent living. According to Dr. Shaleen, neither alternative was available because the transitional living home was filled to capacity and K.L. was incapable of living independently. After a hearing, the district court granted the petition and ordered continuing treatment for one year. The court explicitly found:

I find that if the respondent is not treated there exists a serious risk of harm to himself or others in that there would be a substantial deterioration of his physical health, a substantial deterioration of his mental health and the dangers are that he would be unable to care for himself. He would have suicidal thoughts and he would become aggressive to other people as well.

And the key issue here, the main issue is whether he can be treated outside the State Hospital. The family has indicated that they would care for him on an out-patient basis and provide him with the necessary assistance in obtaining his treatment through the Human Service Center and his medication treatment. The hospital believes that he needs more structure. In this case I believe that the evidence is clear and convincing that treatment other than hospitalization would not be adequate to meet his needs or be sufficient to prevent harm or injuries to himself or others. And the specific risks the Court is concerned with are the danger to other people. The danger to himself, however, is the most important issue and his inability to care for himself. And I realize the family is able and willing to care for him, however, the expert testimony of the doctor is that he needs more structure than just somebody watching him and caring for him, and that structure has to be provided in a hospital setting, at least at the Crossroads setting within the hospital. The doctor indicated that at the bare minimum he must be off the behavior plan, to graduate if you will, to the TL home level and he's not reached that level of care at this time. So while the family is willing to provide for his care I don't believe that there is a showing that such care would meet the structure as defined by the hospital through testimony of the doctor here today.

I conclude the respondent is mentally ill and chemically dependent and I order he undergo treatment at the North Dakota State hospital not to exceed one year.

[¶ 4] On appeal, K.L. argues the district court clearly erred, because he is capable of living independently with the

help of his family. The Petitioner argues the district court properly found that alternative treatment was not adequate to meet K.L.'s needs and K.L. requires continued hospitalization.

[¶ 5] The district court had jurisdiction under N.D.C.C. §§ 25–03.1–03 and 25–03.1–19. The appeal was timely under N.D.R.App.P. 2.1(a) and N.D.C.C. § 25–03.1–29. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 25–03.1–29.

## II

[¶ 6] Persons who require treatment are entitled to the least restrictive treatment that will meet their treatment needs. N.D.C.C. § 25–03.1–21(1). "To comply with the requirements of N.D.C.C. § 25–03.1–21(1), the district court is required to make a two-part inquiry: (1) whether a treatment program other than hospitalization is adequate to meet the individual's treatment needs, and (2) whether an alternative treatment program is sufficient to prevent harm or injuries which an individual may inflict on himself or others." *Interest of D.P.*, 2001 ND 203, ¶ 12, 636 N.W.2d 921. "The court must find by clear and convincing evidence that alternative treatment is not adequate or hospitalization is the least restrictive alternative." *Interest of D.Z.*, 2002 ND 132, ¶ 10, 649 N.W.2d 231. "The experts' explanations must show why continuation is the least restrictive condition necessary for the treatment." *Interest of T.H.*, 482 N.W.2d 615, 625 (N.D.1992) (citing *Interest of Goodwin*, 366 N.W.2d 809, 814 (N.D. 1985)). This Court applies a more probing clearly erroneous standard when reviewing an involuntary treatment order. *Interest of M.M.*, 2005 ND 219, ¶ 9, 707 N.W.2d 78. "Under this more probing standard, 'we will affirm an order for involuntary treatment unless it is induced by an erroneous

view of the law or if we are firmly convinced it is not supported by clear and convincing evidence.'" *Id.* (quoting *Interest of P.B.*, 2005 ND 201, ¶ 5, 706 N.W.2d 78). We will not set aside the district court's findings of fact unless they are clearly erroneous. *Interest of D.P.*, at ¶ 3. "A district court's finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made." *Id.*

[¶ 7] At the evidentiary hearing, Dr. Shaleen testified and K.L. did not dispute that he continues to be mentally ill and requires treatment. She testified K.L. experiences paranoia and depression. Dr. Shaleen testified K.L. isolates himself from other people, sleeps a great deal, and has poor energy. She admitted he is doing better with his behavioral plan but testified he still needs prompting from hospital staff to do the tasks. Dr. Shaleen testified he has a history of verbal aggression such as swearing at staff and calling other patients names, although this behavior has improved since K.L. has been on a behavioral plan. Dr. Shaleen testified she considers him a danger to himself because he has a history of serious suicide risk, including one incident of drug overdose and another of his holding a shotgun to his head. She testified that without the structure of the Crossroads Program, K.L. would face a substantial likelihood of relapsing. Dr. Shaleen testified K.L. is still a danger to himself and others. She testified he still has suicidal thoughts and was recently suspected of abusing drugs at the State Hospital. She concluded that if he were to relapse, he would be unable to care for himself and could become aggressive towards others. Dr. Shaleen testified that at this time, alternative treatment pro-

grams are inappropriate because K.L. is still having difficulty in the Crossroads Program, he requires a behavioral plan, and without the structure of this hospital treatment, he has not demonstrated the ability to care for himself. She testified that continued structure would keep him safer. Dr. Shaleen's prognosis for K.L. is that the transitional living home will be the next step towards recovery, but he will have to complete his behavioral plan before this alternative becomes viable.

[¶ 8] K.L.'s mother testified she has noticed a great improvement in K.L. She believes that because K.L. has been doing well on his medications, he could do well on out-patient treatment with the help of the Human Service Center. K.L.'s mother testified that if released, K.L. could live in a spare room in his grandmother's apartment, which is in the same building as her own, until they could find him an efficiency apartment of his own.

[¶ 9] The district court's findings are supported by the record and are not clearly erroneous. The court considered independent living as an alternative treatment and concluded it is not adequate to meet K.L.'s current treatment needs. The record supports the finding that K.L. poses a danger to himself, because he has not consistently demonstrated he can care for himself and because he continues to have suicidal thoughts. The record reflects he may have recently abused drugs. Although his condition has improved, the district court could reasonably conclude by clear and convincing evidence that K.L. has not improved to a point that he would be safe living by himself, even with the help of his family. K.L.'s mother testified that K.L. would be looking for an efficiency apartment if released. Although K.L.'s family may be able to provide some structure, it would be far less than the structure the State Hospital could provide and

the record shows K.L. needs. If K.L. were to relapse, the record supports the finding that he could pose an even greater danger to himself and others. The record supports the district court's findings, and they are not clearly erroneous.

[¶ 10] Mentally ill persons may not be civilly committed if they pose no danger to themselves, and families can play an important role in treating mentally ill persons. *O'Connor v. Donaldson,* 422 U.S. 563, 576, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). The clear and convincing evidence presented in the record, however, reflects that K.L. still poses a danger to himself because of his inability to care for himself and his risk of suicide. While family involvement may be crucial in the recovery of mentally ill persons, the willingness of family members alone cannot defeat a district court finding that a person is dangerous and requires hospitalization if the record supports that finding.

### III

[¶ 11] The district court's continuing treatment order is affirmed.

[¶ 12] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.