2013 ND 109

**In the Interest of S.R.B.**

**Richard Beane, Petitioner and Appellee**

**v.**

**S.R.B., Respondent and Appellant.**

**No. 20130112.**

Supreme Court of North Dakota.

June 19, 2013.

Ariston E. Johnson (argued), Assistant State's Attorney, and Dennis Edward Johnson (on brief), State's Attorney, Watford City, N.D., for petitioner and appellee.

Gregory Ian Runge, Bismarck, N.D., for respondent and appellant.

MARING, Justice.

[¶ 1] S.R.B. appealed the trial court's order for hospitalization and treatment at the North Dakota State Hospital for ninety days. *See Interest of S.R.B.*, 2013 ND 75, 830 N.W.2d 565. In *Interest of S.R.B.*, 2013 ND 75, 830 N.W.2d 565, this Court held the trial court's findings were insufficient to support the trial court's order, remanded for expedited findings, and retained jurisdiction under N.D.R.App.P. 35(a)(3).[1] On remand, the trial court complied with our mandate and entered additional findings and an amended order. We conclude the trial court did not err in finding clear and convincing evidence supported an order for hospitalization and treatment. We affirm the trial court's amended order dated May 19, 2013.

I

[¶ 2] This Court set forth the relevant facts in *Interest of S.R.B.*, 2013 ND 75, ¶¶ 2–4, 830 N.W.2d 565:

On February 28, 2013, S.R.B.'s father filed a petition for involuntary commitment of S.R.B. The petition alleged S.R.B. was mentally ill and there was a reasonable expectation of a serious risk of harm if S.R.B. was not treated. The petition alleged that S.R.B. called a nearby school looking for his daughter,

wife, and lover, of which he has none. The petition also alleged S.R.B.'s neighbor saw S.R.B. "walking around his house this morning with nothing on but his underwear shorts." The petitioner requested emergency treatment, alleging S.R.B. was not taking his medication.

The trial court ordered emergency treatment and committed S.R.B. to Sanford Health, Bismarck, North Dakota. On March 8, 2013, a preliminary hearing was held. At the preliminary hearing, the trial court ordered S.R.B. be treated at Sanford Health for a period not to exceed fourteen days.

On March 21, 2013, a hearing for the hospitalization and treatment of S.R.B. was held. At the treatment hearing, Dr. Sacheen Shrestha, S.R.B.'s treating psychiatrist, testified that S.R.B. suffers from schizophrenia undifferentiated type and opined that S.R.B. has a substantial likelihood of substantial deterioration in his mental health due to his failure to take antipsychotic medication.

[¶ 3] S.R.B. appealed the trial court's order. *Id.* at ¶ 7. Our Court concluded "insufficient findings appear in the record to support the trial court's order" and remanded with instructions for expedited entry of findings and entry of an amended order for hospitalization and treatment. *See id.* at ¶ 1. We retained jurisdiction. *Id.*

[¶ 4] On remand, the trial court issued an amended order finding S.R.B. is mentally ill, namely, he has schizophrenia;

---

1. We also reversed the trial court's separate order requiring use of prescribed medication for insufficient notice under N.D.C.C. § 25–03.1–18.1. The State Hospital did not file a request for use of forced medication on remand. Therefore, there is no order for treatment with forced medication in effect. The May 19, 2013, order for hospitalization and treatment only allows the State Hospital to treat S.R.B. with medication and therapy he agrees to voluntarily.

S.R.B. has exhibited "auditory hallucinations, other perceptual difficulties like telepathic conversations, definitely delusions and tangential thought process" which impair his ability to use self-control, judgment, and discretion; and his current thinking and behavior put him at a risk to accidentally hurt himself or others. The trial court also found alternative treatment is not sufficient to meet S.R.B.'s needs based on the safety concerns surrounding S.R.B.'s current delusions and disorganized thoughts.

[¶ 5] In his supplemental brief, S.R.B. argues the amended order for hospitalization and treatment dated May 19, 2013, is not supported by clear and convincing evidence.

## II

[¶ 6] S.R.B. argues the trial court erred in finding the petitioner proved by clear and convincing evidence he is a person requiring treatment.

[¶ 7] In *Interest of S.R.B.*, we set out the applicable standard of review:

On appeal from an order for hospitalization and treatment, we review the procedures, findings, and conclusions of the trial court. *Interest of J.S.*, 2001 ND 10, ¶ 4, 621 N.W.2d 582 (citing N.D.C.C. § 25–03.1–29). "A trial court's findings are subject to a more probing clearly erroneous standard of review." *Id.* (quotations omitted). A finding is clearly erroneous if it is induced by an erroneous view of the law, it is not supported by the evidence, or this Court is left with a definite and firm conviction a mistake has been made. *In re D.Z.*, 2002 ND 132, ¶ 6, 649 N.W.2d 231.

2013 ND 75, ¶ 9, 830 N.W.2d 565.

[¶ 8] Under N.D.C.C. § 25–03.1–19, the petitioner has the burden of proving by clear and convincing evidence the respondent is a person requiring treatment. A person requiring treatment means "a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated for the mental illness or chemical dependency there exists a serious risk of harm to that person, others, or property." N.D.C.C. § 25–03.1–02(12).

### A

[¶ 9] S.R.B. argues the trial court erred in finding by clear and convincing evidence he is mentally ill.

[¶ 10] Under N.D.C.C. § 25–03.1–02(11), a mentally ill person "means an individual with an organic, mental, or emotional disorder which substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations." Thus, the statute requires proof of (1) an organic, mental, or emotional disorder; and (2) substantial impairment. *See Interest of K.J.L.*, 541 N.W.2d 698, 700 (N.D.1996); *Interest of S.S.*, 491 N.W.2d 721, 723 (N.D. 1992).

[¶ 11] S.R.B. concedes Dr. Shrestha diagnosed him with schizophrenia satisfying the first prong of mental illness under N.D.C.C. § 25–03.1–02(11). He argues the petitioner did not prove by clear and convincing evidence that his mental illness substantially impairs his ability to use self-control, judgment, or discretion.

[¶ 12] The trial court found S.R.B. has schizophrenia, undifferentiated type and, as a result of the schizophrenia, S.R.B. suffers from auditory hallucinations and delusions impairing his ability to exhibit self-control, judgment, and discretion. The record supports the trial court's findings and conclusion that the petitioner has proven by clear and convincing evidence S.R.B.'s mental illness substantially impairs his capacity to use self-control, judg-

ment, and discretion in the conduct of his personal affairs and social relations.

[¶ 13] The record shows, prior to his hospitalization, S.R.B. called a nearby school looking for his wife, daughter, and lover, of which he has none. S.R.B.'s neighbor also saw S.R.B. walking outside his home in February wearing only his "underwear shorts." At the involuntary treatment hearing, Dr. Shrestha opined S.R.B. suffers from "auditory hallucinations and some other perceptual difficulties like telepathic conversations, definitely delusions, and tangential—well, thought process, some disorganized thought processes, and some disorganized behavior." S.R.B. argued his prior methamphetamine usage may be the cause for such behavior. However, Dr. Shrestha testified S.R.B. tested negative in his drug screening and opined that if S.R.B.'s symptoms are caused by methamphetamine usage, the symptoms would disappear. He opined S.R.B.'s symptoms are caused by schizophrenia, not methamphetamine usage.

[¶ 14] S.R.B. did not present a mental health expert to refute Dr. Shrestha's medical opinion. "We have recognized a 'district court's acceptance of unrefuted expert testimony showing a committed individual is mentally ill is not clearly erroneous.'" *Interest of W.J.C.A.*, 2012 ND 12, ¶ 12, 810 N.W.2d 327 (quoting *Interest of D.P.*, 2001 ND 203, ¶ 6, 636 N.W.2d 921). Therefore, we conclude the trial court's findings that S.R.B. is mentally ill are not clearly erroneous.

### B

[¶ 15] S.R.B. argues the petitioner failed to prove there is a reasonable expectation that, if untreated, he poses a serious risk of harm to himself, others, or property.

[¶ 16] The trial court must find clear and convincing evidence exists to establish the respondent poses a serious risk of harm to himself, others, or property. N.D.C.C. § 25–03.1–19. A person poses a serious risk of harm to himself, others, or property if the following exists:

[A] substantial likelihood of:

a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon evidence of objective facts to establish the loss of cognitive or volitional control over the person's thoughts or actions or based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors, including the effect of the person's mental condition on the person's ability to consent.

N.D.C.C. § 25–03.1–02(12).

[¶ 17] The trial court found "S.R.B.'s current thinking and behavior, the psychotic symptoms, put him at risk of hurting himself accidently" and "S.R.B. may act inappropriately under the influence of the delusional and disorganized thoughts, whereby hurting himself or others." The trial court concluded the petitioner had proven by clear and convincing evidence (1) "there is a substantial likelihood that

S.R.B. may inflict serious bodily harm on another person, as manifested by acts or threats[;]" (2) "there is a substantial likelihood of substantial deterioration in S.R.B.'s physical health, or substantial injury, based upon recent poor judgment by S.R.B. in providing shelter and personal care[;]" and (3) "there is a substantial likelihood of substantial deterioration in S.R.B.'s mental health which would predictably result in dangerousness to S.R.B. or others, due to loss of cognitive control over S.R.B.'s thoughts and actions, as shown by acts and threats in S.R.B.'s treatment history, current condition, and other relevant factors." The trial court's findings and conclusions are supported by clear and convincing evidence.

[¶ 18] At the treatment hearing, Dr. Shrestha testified "[S.R.B.] has been focused on some incidents of the past where he has had thoughts about shooting people who have had arguments" and S.R.B. has "thoughts about being angry and indirectly hurting people" but the thoughts have been "vague."

[¶ 19] Dr. Shrestha also testified that S.R.B. exhibits psychotic symptoms, such as auditory hallucinations, perceptual difficulties, and delusions. Dr. Shrestha opined that without medication the psychotic symptoms generally get worse. He opined the primary treatment for schizophrenia is antipsychotic medications and "one of the most common reasons for relapse and deterioration is noncompliance to treatment, not taking medications.... generally, things do get worse. Sometimes they're, kind of, the same. It doesn't get better." Dr. Shrestha testified S.R.B. has refused to take his antipsychotic medication.

[¶ 20] The evidence in the record and Dr. Shrestha's testimony permit reasonable inferences to be drawn in support of the trial court's findings. We conclude the

trial court's findings and conclusion that S.R.B. poses a serious risk of harm to himself, others, or property are not clearly erroneous.

### III

[¶ 21] S.R.B. argues the trial court failed to consider the least restrictive alternative treatment. *See* N.D.C.C. § 25–03.1–40(2) (stating a patient has a right to "the least restrictive conditions necessary to achieve the purposes of treatment"). He also argues the Report Assessing the Availability and Appropriateness of Alternative Treatment was not available for the trial court to review.

[¶ 22] "Persons who require treatment are entitled to the least restrictive treatment that will meet their treatment needs." *In re K.L.*, 2006 ND 103, ¶ 6, 713 N.W.2d 537 (citing N.D.C.C. § 25–03.1–21(1)). Section 25–03.1–21(1), N.D.C.C., provides:

> Before making its decision in an involuntary treatment hearing, *the court shall review a report assessing the availability and appropriateness* for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the state hospital or treatment facility. If the court finds that a treatment program other than hospitalization is adequate to meet the respondent's treatment needs and is sufficient to prevent harm or injuries which the individual may inflict upon the individual or others, the court shall order the respondent to receive whatever treatment other than hospitalization is appropriate for a period of ninety days.

(Emphasis added). To comply with N.D.C.C. § 25–03.1–21(1), the trial court is required to find "(1) whether a treatment program other than hospitalization is adequate to meet the individual's treatment needs, and (2) whether an alternative

treatment program is sufficient to prevent harm or injuries which an individual may inflict on himself or others." *In re K.L.*, at ¶ 6.

[¶ 23] On remand, the trial court found: "Alternative treatment, that [sic] other than inpatient, would not be sufficient to meet the treatment needs for S.R.B.... These alternative outpatient services are insufficient because of safety concerns based upon the influences of current delusional and disorganized thoughts as they pertain to S.R.B.'s actions." The trial court's finding that hospitalization is the least restrictive treatment available is supported by clear and convincing evidence.

[¶ 24] In *Interest of S.R.B.*, we stated: Dr. Shrestha provided a report assessing the availability and appropriateness of treatment. In his report, Dr. Shrestha considered alternative treatment but opined that such treatment would not be sufficient to meet S.R.B.'s treatment needs based on S.R.B.'s refusal to take medication and continued delusions. Dr. Shrestha also opined that the alternative treatment program would not prevent a danger to S.R.B., others, or property because of S.R.B.'s refusal to take medication, his continued delusions, his vague homicidal comments, and his past physical aggression. 2013 ND 75, ¶ 16, 830 N.W.2d 565. Further, the record on appeal contains Dr. Shrestha's Report Assessing the Availability and Appropriateness of Treatment. The report concluded inpatient treatment is necessary to provide medication to S.R.B. because S.R.B. has refused medication while hospitalized at Sanford Medical Center and, without proper treatment, he poses a danger to himself, others, or property based on "vague homicidal comments and ... a history of physical aggression that has led to hospitalization."

[¶ 25] We conclude the trial court's finding and conclusion that involuntary hospitalization is the least restrictive treatment available is not clearly erroneous and the statutory requirements of N.D.C.C. § 25–03.1–21 were met, as the trial court reviewed the Report Assessing the Availability and Appropriateness of Treatment.

## IV

[¶ 26] We affirm the trial court's May 19, 2013, amended order for hospitalization and treatment at the North Dakota State Hospital for ninety days.

[¶ 27] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 28] I agree under our standard of review that we must affirm the finding S.R.B. is mentally ill. I respectfully dissent from that portion of the majority decision concluding clear and convincing evidence supports the finding a reasonable expectation exists that S.R.B., if untreated, poses a serious risk of harm to himself, others or property. Majority opinion at ¶ 20.

[¶ 29] Our standard of review in these cases is well settled:

"This Court's review of an appeal under N.D.C.C. ch. 25–03.1 is limited to a review of the procedures, findings, and conclusions of the trial court. Balancing the competing interests of protecting a mentally ill person and preserving that person's liberty, requires trial courts to use a clear and convincing standard of proof while we use the more probing clearly erroneous standard of review. A trial court's finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evi-

dence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction 'it is not supported by clear and convincing evidence.'"

*Interest of D.A.*, 2005 ND 116, ¶ 11, 698 N.W.2d 474 (citations and quotation omitted).

[¶ 30] Mental health, termination of parental rights and several other adjudications involving significant loss of liberty utilize the clear and convincing evidence burden of proof. In those contexts, "[c]lear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true." *Interest of A.B.*, 2009 ND 116, ¶ 16, 767 N.W.2d 817 (quotation omitted).

[¶ 31] We also have recognized restrictions on the mental health commitment process, stating:

"[T]he burden of proof is on the petitioner to prove by clear and convincing evidence the respondent is a 'person requiring treatment.' The respondent is presumed to not require treatment. Only an individual who is a 'person requiring treatment' may be involuntarily admitted to the state hospital or another treatment facility. Proof that an individual will merely benefit from treatment does not satisfy this standard."

*Interest of B.D.K.*, 2007 ND 186, ¶ 15, 742 N.W.2d 41 (citations omitted).

[¶ 32] Here, the district court made findings on remand. As a result of those findings, S.R.B. is involuntarily committed to the State Hospital for up to ninety days, but he will only get the medication and therapy he agrees to receive. Majority opinion at ¶ 1 n.1. The district court did all it could with the record but only found the following:

- "S.R.B. has had thoughts about shooting people who have had arguments so as to break up a fight.
- "S.R.B. also shared that he has had feelings of anger. S.R.B. denies that he has thoughts about hurting anyone, or hurting himself, but at the same time S.R.B. has thoughts about being angry and indirectly hurting people.
- "S.R.B. has previously demonstrated aggressive behavior.
- "S.R.B.'s current thinking and behavior, the psychotic symptoms, put him at risk of hurting himself accidently.
- "S.R.B. may act inappropriately under the influence of the delusional and disorganized thoughts, whereby hurting himself or others."

[¶ 33] From the district court's findings, it concluded, "The petitioner has proved by clear and convincing evidence that there is a substantial likelihood that S.R.B. may inflict serious bodily harm on another person, as manifested by acts or threats." However, the district court did not find S.R.B. poses a "substantial likelihood" of harm to himself or others. N.D.C.C. § 25–03.1–19. Rather, the district court found S.R.B. "may" act inappropriately and that he might hurt himself "accidentally." These equivocal findings track the doctor's testimony describing S.R.B.'s talk of violence as "vague." Majority opinion at ¶ 18.

[¶ 34] The district court also concluded, "The petitioner has proved by clear and convincing evidence that there is a substantial likelihood of substantial deterioration in S.R.B.'s physical health, or substantial injury, based upon recent poor judgment by S.R.B. in providing for shelter and personal care." However, the court's findings do not mention shelter or personal care other than to recite "S.R.B. was seen 'walking around [his] house this morning with nothing on but his under-

wear shorts.' S.R.B. would not allow his mother to come into the house and touch things unless she wore gloves." Many people, and I suspect most males, hope walking around in a house wearing underwear shorts is insufficient cause for involuntary mental health treatment. If the ambiguous finding is that S.R.B. was in need of treatment for walking outside his house in February while only wearing undergarments, additional findings about duration, weather conditions and S.R.B.'s purpose are required. Otherwise barefoot sprints to the mailbox and underdressed excursions to fetch a newspaper from the sidewalk become potential grounds for treatment. Demanding that one's mother handle household items while wearing gloves is unusual, but again falls short of warranting involuntary commitment to provide S.R.B. with the opportunity to thereafter voluntarily receive treatment or medication.

[¶ 35] The district court further concluded, "The petitioner has proved by clear and convincing evidence that there is a substantial likelihood of substantial deterioration in S.R.B.'s mental health which would predictably result in dangerousness to S.R.B. or others, due to loss of cognitive control over S.R.B.'s thoughts and actions, as shown by acts and threats in S.R.B.'s treatment history, current condition, and other relevant factors." Again, the district court's findings and the sole witness's testimony was much less clear. The testifying doctor stated, "[O]ne of the most common reasons for relapse and deterioration is noncompliance to treatment, not taking medications ... generally, things do get worse. Sometimes they're, kind of, the same. It doesn't get better." Majority opinion at ¶ 19.

[¶ 36] S.R.B.'s condition apparently would improve with medication and treatment. However, that a person might ben-

efit from treatment does not provide a court with lawful grounds to involuntarily hold a person until they accept treatment. *See Interest of B.D.K.*, 2007 ND 186, ¶¶ 15–16, 742 N.W.2d 41. On this record, I believe the evidence is neither clear nor convincing that S.R.B. is in need of treatment. I would reverse the district court.

[¶ 37] Daniel J. Crothers