Jensen, Justice.
 

 [¶ 1] B.A.K. appeals an order for treatment in which the district court found her
 
 *883
 
 to be a person who is mentally ill and requiring treatment. We reverse the district court's order finding B.A.K. to be a person requiring treatment under N.D.C.C. § 25-03.1-02.
 

 I
 

 [¶ 2] B.A.K. was initially hospitalized after an outburst at her regular physician's office. In March 2018, her daughter petitioned for B.A.K.'s involuntary commitment. B.A.K.'s husband also attempted to commit B.A.K. earlier in March 2018 while they were in Arizona for the winter. After a preliminary hearing, the district court found B.A.K. to be a mentally ill person and a person requiring treatment. The district court ordered B.A.K. to undergo treatment for a period not to exceed 14 days. The district court held a treatment hearing on April 5, 2018, and it concluded B.A.K. was a mentally ill person and a person requiring treatment.
 

 [¶ 3] At the treatment hearing, the district court heard testimony about B.A.K.'s mental health deterioration and her refusal to take medication. In October 2017, B.A.K. started taking anxiety and depression medication. She then experienced joint pain, and she was prescribed a steroid. B.A.K. was also taking a prescribed statin for high blood pressure. B.A.K. decided to take herself off the anxiety and depression medications, and she eventually stopped taking all medications. B.A.K. believed she was being monitored, among other delusions.
 

 [¶ 4] Dr. Cheryl Huber, B.A.K.'s attending psychiatrist since her commitment, testified about B.A.K.'s manic state and tangential thoughts when she was first admitted. Dr. Huber completed an evaluation on April 4, 2018, which indicated B.A.K. was having a manic episode triggered by treatment with antidepressant and corticosteroid medications. Dr. Huber diagnosed B.A.K. with a mood disorder, not otherwise specified, and psychosis. Dr. Huber noted B.A.K.'s mood rapidly fluctuated and she had some delusional thoughts. Dr. Huber testified B.A.K. refused to take prescription medications during her hospitalization. Dr. Huber also testified B.A.K. is a mentally ill person requiring treatment under the Mental Health Act. B.A.K.'s lack of mental health issues in the past did not affect Dr. Huber's diagnosis or recommendation that B.A.K. was a person requiring treatment. Dr. Huber did not find there was an alternative to hospitalization because B.A.K. did not believe she had a problem requiring treatment and B.A.K. was not following the treatment needed to stabilize her mood. Dr. Huber believed this was a difficult situation because B.A.K. clearly needed treatment, but B.A.K. demonstrated self-control and had not required emergency medication, seclusion, or restraint while hospitalized.
 

 [¶ 5] The district court found B.A.K. to be a mentally ill person, diagnosed with a mood disorder, not otherwise specified, including paranoia and a manic episode. The district court determined there was a substantial likelihood of a substantial deterioration in B.A.K.'s mental health which would predictably result in dangerousness to B.A.K., others, or property. The district court noted the evidence of danger to B.A.K., others, or property was that, "[h]er ability to make decisions is impaired by her unstable mood and thought process." The district court ordered B.A.K. hospitalized for a 90-day period ending July 3, 2018. B.A.K. appeals.
 

 II
 

 [¶ 6] On appeal, B.A.K. argues the district court's order was not supported
 
 *884
 
 by clear and convincing evidence to show she was a mentally ill person and a person requiring treatment. This Court's review of an appeal from a mental health hearing is well established:
 

 Our review of an appeal under N.D.C.C. ch. 25-03.1 is "limited to a review of the procedures, findings, and conclusions of the trial court."
 
 Interest of D.A.
 
 ,
 
 2005 ND 116
 
 , ¶ 11,
 
 698 N.W.2d 474
 
 . We review the findings of the district court under the more probing clearly erroneous standard of review.
 

 Id.
 

 A finding of fact is clearly erroneous if "it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction 'it is not supported by clear and convincing evidence.' "
 

 Id.
 

 (quoting
 
 Interest of J.D.
 
 ,
 
 2002 ND 50
 
 , ¶ 13,
 
 640 N.W.2d 733
 
 and
 
 Interest of R.N.
 
 ,
 
 513 N.W.2d 370
 
 , 371 (N.D. 1994) ).
 

 Interest of B.L.S.
 
 ,
 
 2006 ND 218
 
 , ¶ 10,
 
 723 N.W.2d 395
 
 .
 

 [¶ 7] Only a person requiring treatment may be involuntarily admitted to a treatment facility. N.D.C.C. § 25-03.1-07. In a proceeding under N.D.C.C. ch. 25-03.1, the respondent is presumed not to require treatment.
 
 Interest of B.D.K.
 
 ,
 
 2007 ND 186
 
 , ¶ 15,
 
 742 N.W.2d 41
 
 . A person requiring treatment is one "who is mentally ill or a person who is chemically dependent, and there is a reasonable expectation that if the individual is not treated for the mental illness or chemical dependency there exists a serious risk of harm to that individual, others, or property." N.D.C.C. § 25-03.1-02(13). " 'Mentally ill person' or 'person who is mentally ill' means an individual with an organic, mental, or emotional disorder that substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations." N.D.C.C. § 25-03.1-02(12). A serious risk of harm means the substantial likelihood of:
 

 a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;
 

 b. Killing or inflicting serious bodily harm on another individual or inflicting significant property damage, as manifested by acts or threats;
 

 c. Substantial deterioration in physical health or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or
 

 d. Substantial deterioration in mental health which would predictably result in dangerousness to that individual, others, or property, based upon evidence of objective facts to establish the loss of cognitive or volitional control over the individual's thoughts or actions or based upon acts, threats, or patterns in the individual's treatment history, current condition, and other relevant factors, including the effect of the individual's mental condition on the individual's ability to consent.
 

 N.D.C.C. § 25-03.1-02(20). The district court concluded B.A.K. was a person requiring treatment under N.D.C.C. § 25-03.1-02(20)(d).
 

 [¶ 8] In
 
 Interest of R.N.
 
 , this Court concluded the record did not support the district court's finding R.N. was a person requiring treatment.
 
 450 N.W.2d 758
 
 , 761 (N.D. 1990). In
 
 R.N.
 
 , the district court found R.N. was a person requiring treatment because of a substantial likelihood of suicide and substantial deterioration of health.
 

 Id.
 

 at 760
 
 . R.N.'s behavior indicated
 
 *885
 
 she was mentally ill and refused to take medication, but she otherwise remained physically healthy.
 

 Id.
 

 at 760-61
 
 . This Court concluded the record supported a conclusion R.N. would benefit from medication, but she refused to take the recommended medication.
 

 Id.
 

 at 761
 
 . This Court noted the refusal to take medication is not the standard for involuntary commitment, and the district court clearly erred because the evidence did not support finding R.N. was a person requiring treatment.
 

 Id.
 

 [¶ 9] This Court is left with a definite and firm conviction the district court's conclusion is not supported by clear and convincing evidence. The evidence does not support finding B.A.K. is a person requiring treatment under N.D.C.C. § 25-03.1-02. There was not clear and convincing evidence of a reasonable expectation that if B.A.K. was not treated for mental illness, there would be a serious risk of harm to B.A.K., others, or property. Despite Dr. Huber's testimony that she believed B.A.K. was a person requiring treatment, she also testified B.A.K. required no restraint, medication, or seclusion while hospitalized. Like in
 
 R.N.
 
 , the record only supports the conclusion B.A.K. would benefit from medication. Dr. Huber identified B.A.K. was manic and had delusional thoughts, but no evidence was presented showing a reasonable expectation B.A.K. would be a serious risk to herself, others, or property. B.A.K. refused to take medications to stabilize her mood, but there was no evidence presented showing a substantial deterioration of B.A.K.'s mental health that would lead to dangerousness, as provided by N.D.C.C. § 25-03.1-02(20)(d). Her physical health remained intact during her initial hospitalization. Nothing in the record indicates a history of or present risk of dangerousness to B.A.K., others, or property. The district court clearly erred in finding B.A.K. required treatment.
 

 III
 

 [¶ 10] We have considered B.A.K.'s other arguments and find them to be either without merit or unnecessary to our decision. We reverse the district court's order finding B.A.K. to be a person requiring treatment under N.D.C.C. § 25-03.1-02.
 

 [¶ 11] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.