# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 12

In the Interest of E.S.

Katrina DeDona, PsyD,                                 Petitioner and Appellee

v.

E.S.,                                                              Respondent and Appellant

No. 20180426

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Mark T. Blumer, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Dana M. Sims, Assistant State's Attorney, Jamestown, ND, for petitioner and appellee.

Andrew Marquart, Fargo, ND, for respondent and appellant; submitted on brief.

**McEvers, Justice.**

[¶1]    E.S. appeals from an order requiring involuntary treatment in which the district court found him to be mentally ill and a person requiring treatment.  We affirm.

I

[¶2]    In October 2018, Dr. Katrina DeDona submitted an application for emergency admission for E.S. to be admitted to the North Dakota State Hospital after being paroled from James River Correctional Center for a charge of terrorizing.  The application alleged E.S. was often agitated, preoccupied with a belief that there was a conspiracy against him, and, as a result, unable to participate in his own treatment and discharge planning.  A petition for involuntary commitment was filed, claiming E.S. was mentally ill and there was a reasonable expectation of serious risk of harm if he was not treated.  E.S. requested and was appointed an independent examiner, Dr. Naveed Haider.

[¶3]    At the treatment hearing, the district court heard testimony from four witnesses regarding E.S.'s mental state and corresponding treatment efforts.  Three witnesses, qualified as experts, were called by the petitioner: Dr. Naveed Haider, Dr. William Pryatel, and Dr. Katrina DeDona.  E.S. testified on his own behalf.

[¶4]    Dr. Haider testified that after examining E.S., he assigned him a psychiatric diagnosis of delusional disorder, incorporating his findings in a psychiatric evaluation entered into the record.  Dr. Haider testified he believed E.S. was in need of treatment and was a danger to himself, others, or property.

[¶5]    After examining and observing E.S. several times, Dr. Pryatel diagnosed E.S. with delusional disorder, persecutory type.  Dr. Pryatel also testified that a less restrictive setting, like Centre, Inc., would be suitable for E.S.

[¶6]     Dr. DeDona testified that early in his admission, E.S. was agitated, irritable, and verbally aggressive and since taking his medications, those behaviors have decreased.  She testified that, if released into the community without the support of a structured setting and medication, she expected to see an increase in his agitation and verbal aggression and others would view him as threatening due to his tendency to focus on delusional beliefs.  She was concerned he would deteriorate and pose a risk to himself or others.

[¶7]     E.S. testified it was impossible for the expert witnesses to prove he has a delusional disorder.  He claimed he was not a danger to himself or others.  He argued on the merits of three underlying cases, expressing a desire to call witnesses and maintaining his innocence in all three cases.

[¶8]     At the conclusion of the treatment hearing, the district court issued its order on the record, finding clear and convincing evidence establishing E.S. was mentally ill and a person requiring treatment.  The court ordered E.S. be hospitalized for a period not to exceed 90 days, ending February 11, 2019.

II

[¶9]     On appeal, E.S. argues the district court's order was not supported by clear and convincing evidence to show he was mentally ill and a person requiring treatment. In *Interest of B.A.K.*, we articulated our longstanding standard for reviewing appeals from mental health hearings:

> Our review of an appeal under N.D.C.C. ch. 25-03.1 is limited to a review of the procedures, findings, and conclusions of the trial court.  We review the findings of the district court under the more probing clearly erroneous standard of review.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction it is not supported by clear and convincing evidence.

*Interest of B.L.S.*, 2006 ND 218, ¶ 10, 723 N.W.2d 395.

2

Only a person requiring treatment may be involuntarily admitted to a treatment facility. N.D.C.C. § 25-03.1-07. In a proceeding under N.D.C.C. ch. 25-03.1, the respondent is presumed not to require treatment. A person requiring treatment is one who is mentally ill or a person who is chemically dependent, and there is a reasonable expectation that if the individual is not treated for the mental illness or chemical dependency there exists a serious risk of harm to that individual, others, or property. N.D.C.C. § 25-03.1-02(13). "Mentally ill person" or "person who is mentally ill" means an individual with an organic, mental, or emotional disorder that substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations. N.D.C.C. § 25-03.1-02(12). A serious risk of harm means the substantial likelihood of:

> a. Suicide . . . .
> b. Killing or inflicting serious bodily harm on another individual or inflicting significant property damage, as manifested by acts or threats;
> c. Substantial deterioration in physical health or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or
> d. Substantial deterioration in mental health which would predictably result in dangerousness to that individual, others, or property, based upon evidence of objective facts to establish the loss of cognitive or volitional control over the individual's thoughts or actions or based upon acts, threats, or patterns in the individual's treatment history, current condition, and other relevant factors, including the effect of the individual's mental condition on the individual's ability to consent.

N.D.C.C.§ 25-03.1-02(20).

2018 ND 139, ¶¶ 6-7, 911 N.W.2d 882 (internal citations and quotations omitted). "When one or more reasonable inferences can be drawn from credible evidence, this Court must accept the inferences drawn by the district court." *In re D.P.*, 2001 ND 203, ¶ 9, 636 N.W.2d 921 (citation omitted).

A

[¶10] E.S. claims there was not clear and convincing evidence he is mentally ill because Dr. Pryatel's testimony that he suffers from a delusional disorder, persecutory

3

type, and Dr. Haider's testimony that he has fixed delusions about people conspiring against him are insufficient to support a finding of mental illness.

[¶11] Dr. DeDona and Dr. Pryatel both filled out reports, submitted in evidence, finding E.S. mentally ill. Dr. Haider, the independent expert examiner, completed a psychiatric evaluation, diagnosing E.S. with delusional disorder. All three testified at the hearing to E.S.'s delusional disorder. E.S. testified at the hearing that he is not delusional, he has five witnesses to prove the RICO conspiracy, and he does not want to hurt himself or others. No testimony or evidence was submitted, aside from E.S.'s own testimony during the hearing, to rebut the three doctors' findings of mental illness.

[¶12] "The weight and credibility given to an expert's opinion is a question of fact subject to the clearly erroneous standard of N.D.R.Civ.P. 52(a)." *In re J.K.*, 1999 ND 182, ¶ 13, 599 N.W.2d 337 (citation omitted). The trial court's decision was not induced by a clearly erroneous view of the law and there was ample evidence in the record to support its finding of mental illness. During the course of his stay at the state hospital, three doctors had the chance to observe and evaluate E.S., and all three concluded he is suffering from mental illness. *See In re M.M.*, 2005 ND 219, ¶ 10, 707 N.W.2d 78 (respondent's statements leading doctors to conclude he suffered from mental illness, along with doctor's testimony at an involuntary treatment hearing that he opined respondent was mentally ill was sufficient to uphold finding of mental illness). We conclude the district court did not err in finding E.S. mentally ill.

B

[¶13] E.S. argues there was not clear and convincing evidence he is a person requiring treatment. Since we have upheld the district court's finding E.S. is mentally ill—the first requirement for finding a person requires treatment—we need only now consider whether there is clear and convincing evidence there is a reasonable expectation that if E.S. is left untreated, there is a serious risk of harm to him, others, or property. *See B.A.K.*, 2018 ND 139, ¶ 7, 911 N.W.2d 882. An individual need not

4

exhibit overt violent action in order for the district court to find that person poses a serious risk of harm to himself or others. *D.P.*, 2001 ND 203, ¶ 9, 636 N.W.2d 921.

[¶14] Dr. Haider, Dr. Pryatel, and Dr. DeDona all testified or wrote in their evaluations that E.S. is consumed by thoughts that others are conspiring against him. Dr. Haider testified that E.S. had been using substances prior to his incarceration and appeared to have a fixed, false delusion that people were conspiring to deprive him of his weapons and had set him up to be jailed under false pretenses. Dr. Haider also testified the combination could place E.S. in danger if he was left untreated. He continued by noting there was a risk to E.S. if he continued calling the police department as he had in the past because his past calls resulted in the police "having him on the ground." He further testified compliance with medication on his own was unlikely because E.S. lacked insight into the state of his mental health diagnosis. Dr. Haider's report notes: "Without treatment it is highly anticipated that he would present as a danger to others driven by his delusional belief system."

[¶15] When asked whether E.S. posed a danger to himself, others, or property, Dr. DeDona testified that without a supportive or stable environment, E.S. would deteriorate and then pose a risk to himself or others. She testified that if E.S. were in the community but not taking his medication, she would expect an increase in his irritability, verbal aggression, and suspicion of others. She further testified he would struggle to maintain a job and be unable to support himself because he would become so focused on his delusional beliefs.

[¶16] This Court in *In re D.Z.*, 2002 ND 132, ¶ 7, 649 N.W.2d 231, affirmed a district court's finding that (1) an individual presents a serious risk of harm to *himself* by his refusal to eat and drink due to paranoid thoughts, and (2) he poses a serious risk of harm to *others* when his paranoia and delusional beliefs could worsen and could result in him harming others in order to stop perceived conspiracies against him. This Court affirmed the trial court's finding despite the absence of any evidence of overt violent action. *Id.* at ¶ 9. The trial court in that case articulated its finding that the individual was a mentally ill person in need of treatment by saying he would

5

"deteriorate physically and mentally without medication may act on perceived threats against him." *Id.*; *see also In re C.A.H.*, 2010 ND 131, 785 N.W.2d 253 (upholding finding of serious risk of harm to others where respondent's family members expressed fear he would hurt others and upholding finding of serious risk of harm to self where respondent's behavior, if left untreated, made it unlikely he would be able to stay in a homeless shelter, find work, or provide himself with food, clothing or shelter, and would have difficulty taking care of his physical needs).

[¶17]  Here, the district court articulated its findings:

> There's a lack of insight, and he remains at high risk of discontinuing the medication that he's on . . . this has been helpful to date towards his treatment program, but E.S. feels that he'd prefer to do exercise and go to church, et cetera, rather than take the medications.  And with this lack of insight it could cause a high-risk factor for discontinuing which would increase his verbal aggressions, agitations.  He would feel threatened by others or possibly threaten others, which could cause a physical harm to himself or others as well as a mental health deterioration.  There is clear and convincing evidence that treatment's necessary, that due to his mental illness as defined by North Dakota Century Code once again he is a person requiring treatment, because he would be a danger to self, others, or mental health would deteriorate significant[ly] if no treatment's received.

[¶18]  Based upon the evidence, we hold the district court's finding that E.S. is a person requiring treatment is not clearly erroneous.

III

[¶19]  The order is affirmed.

[¶20]  Lisa Fair McEvers
       Dale V. Sandstrom, S.J.
       Daniel J. Crothers
       Jon J. Jensen
       Gerald W. VandeWalle, C.J.


[¶21]  The Honorable Dale V. Sandstrom, S.J., sitting in place of Tufte, J., disqualified.

6